78 F.3d 550
 37 U.S.P.Q.2d 1829, 39 U.S.P.Q.2d 1090
 BALDWIN HARDWARE CORPORATION, Plaintiff/Cross-Appellant,
v.
FRANKSU ENTERPRISE CORPORATION, Frank Su and Decorators
Accessories, Ltd., Defendants-Appellants,
and
Klayman & Associates, P.C., and Larry Klayman, Appellants.
 Nos. 93-1185, 93-1186.
 United States Court of Appeals,
Federal Circuit.
 March 4, 1996.
As Amended on Denial of Rehearing and
Rehearing In Banc May 22, 1996.
 
 Appealed from U.S. District Court for the Central District of California; Keller, Judge.
 Thomas D. MacBlain, Brumbaugh, Graves, Donohue & Raymond, of New York City, argued, for plaintiff/cross-appellant. With him on the brief were Robert Neuner, Parker H. Bagley and Gary M. Butter.
 Larry Klayman, Klayman & Associates, P.C., Washington, DC, argued, for appellants.
 Before PAULINE NEWMAN, PLAGER, and RADER, Circuit Judges.
 PLAGER, Circuit Judge.
 
 
 1
 Klayman & Associates, P.C., a law firm ("K & A"), challenges sanctions imposed on the firm by the trial court for failure to comply with local rules and for "unreasonably and vexatiously multiplying the proceedings," during K & A's defense in design patent and trademark infringement litigation brought by Baldwin Hardware Corporation ("Baldwin") against FrankSu Enterprise Corporation, Mr. Frank Su, and Decorators Accessories Ltd. ("Decorax"). Larry Klayman, K & A's lead counsel in the litigation, appeals from the trial court's order permanently prohibiting Mr. Klayman from appearing pro hac vice before the trial judge, William D. Keller, in any future litigation. K & A and Mr. Klayman (collectively "Appellants") argue that the orders are invalid because the trial judge failed to recuse himself from the case despite a financial conflict of interest and apparent bias against appellants and their clients; and that in any event, counsel's conduct did not merit sanctions. Baldwin, which secured a finding of willful infringement below, cross-appeals, seeking full attorney fees for that action and costs and attorney fees for this appeal, which it contends is frivolous.[1] After careful consideration of the record and materials submitted by the parties, we affirm the trial court's award of monetary sanctions against appellants, deny further attorney fees to Baldwin, and award Baldwin costs for this appeal. We also affirm Judge Keller's order permanently prohibiting Mr. Klayman from appearing before him pro hac vice in the future.
 
 BACKGROUND
 
 2
 This regrettable appeal has its origins in design patent and trademark infringement litigation brought by Baldwin, an American manufacturer of bathroom and door hardware, against FrankSu Enterprise Corporation, a Taiwanese competitor, along with Mr. Frank Su, Franksu's owner, and Decorators Accessories Ltd., a Franksu distributor. Judge William D. Keller of the Central District of California presided over a seven-week trial and the motions practice preceding trial.
 
 
 3
 Pretrial proceedings, particularly discovery proceedings, in this matter were marked by appellants' delays in complying, or failure to comply, with the court's rules and orders. On December 9, 1991, Judge Keller assessed against K & A attorney fees and costs incurred by Baldwin in responding to appellants' ex parte application for an extension of time to oppose Baldwin's summary judgment motion, and for a continuance of the hearing date on the motion. Judge Keller found that K & A filed its application for an extension three days after the opposition due date, and that the only proffered reasons for lateness, extensive business travel and the errors of an associate at the firm, were insufficient.
 
 
 4
 Early in the trial, conducted in 1992, reference was made to Baldwin's parent company, Masco. The next day Judge Keller informed the parties that at the time Baldwin filed its complaint in September 1990, the judge's mother had owned shares in Masco as part of a trust fund naming Judge Keller as the beneficiary. The trust sold the shares in November 1990, before the judge had become involved in any way in the case. Because the shares had been sold well before Judge Keller became involved in the case or knew that Masco was related to one of the parties before him, and given the amount of time he had spent on the case to date, the judge concluded that he was not required to recuse himself. Both parties expressly agreed with this conclusion.
 
 
 5
 During the course of the trial, however, appellants requested that Judge Keller recuse himself under 28 U.S.C. § 455 (1994).[2] Appellants cited the following grounds for the motion: (1) that Judge Keller had "prejudged" the case; and (2) that Judge Keller "at some point in [the] case" had a prospective financial interest in Baldwin's parent company, Masco. Judge Keller denied the motion after addressing each of the instances of alleged prejudgment raised by appellants. He also addressed the Masco issue for a second time and concluded that the circumstances did not warrant recusal.
 
 
 6
 Over the course of the trial, Judge Keller admonished Mr. Klayman several times concerning his conduct of the proceedings: for example, failing to provide advanced written notice of the prior art appellants intended to use during trial, as required by 35 U.S.C. § 282; failing to have Mr. Frank Su appear in court on the appointed day after the trial court had granted an extension of time to allow for Mr. Su's travel from Taiwan and preparation by counsel; and lodging a late request for a jury trial on the patent issues in the case after admittedly waiving a jury trial for such issues at a pretrial status conference. Additionally, Judge Keller expressed increasing frustration with Mr. Klayman's practice of continuing to speak after the trial judge requested silence.
 
 
 7
 Following the close of trial, Judge Keller sua sponte ordered Mr. Klayman permanently and prospectively barred from appearing before Judge Keller pro hac vice in any future litigation. Judge Keller cited several actions by Mr. Klayman during the trial as grounds for the order. Additionally, Judge Keller sanctioned K & A under 28 U.S.C. § 1927 for "unreasonably and vexatiously multiplying the proceedings" and awarded Baldwin attorney fees and expenses incurred with respect to various aspects of the trial. Judge Keller incorporated the sanctions orders into his final judgment in the case.
 
 
 8
 Appellants appeal the monetary sanctions and pro hac vice order. Baldwin cross-appeals for full attorney fees and costs incurred in the proceedings below and in this appeal.
 
 DISCUSSION
 
 9
 We have jurisdiction over this matter under 28 U.S.C. § 1295(a)(1), which provides for exclusive Federal Circuit jurisdiction over "an appeal from a final decision of a district court ... if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title [providing district courts original exclusive jurisdiction in patent cases, and original jurisdiction in trademark cases]".
 
 
 10
 * Appellants argue first that the sanctions orders and the pro hac vice order are invalid because they were entered by a judge who was required to recuse himself under 28 U.S.C. § 455, which provides in pertinent part:
 
 
 11
 (a) Any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 
 
 12
 (b) He shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party.... (4) He knows that he, individually or as a fiduciary ... has a financial interest in the subject matter in controversy or in a party to the proceeding....
 
 
 13
 28 U.S.C. § 455(a), (b)(1), (b)(4). Specifically, appellants argue that Judge Keller was required to recuse himself under § 455(a) and (b)(1) because his comments and conduct during the litigation would have led a reasonable person to believe he harbored anti-Asian and anti-semitic sentiments, and therefore to doubt his impartiality.[3] Appellants also argue that the prior ownership of Masco shares by Judge Keller's mother's trust created a financial conflict of interest requiring recusal under § 455(b)(4). Because Judge Keller did not recuse himself, appellants contend, any subsequent orders issued by him, including the sanctions orders and the judgment against appellants' clients, are invalid.
 
 
 14
 In reviewing Judge Keller's denial of recusal, which raises substantive and procedural issues not within our exclusive jurisdiction, we are guided by the law of the regional circuit. See Refac Int'l, Ltd. v. Hitachi, Ltd., 921 F.2d 1247, 1253-54, 16 USPQ2d 1347, 1352 (Fed.Cir.1990) (sanctions under Rule 37 and Rule 11 reviewed under Ninth Circuit law); Atasi Corp. v. Seagate Technology, 847 F.2d 826, 829, 6 USPQ2d 1955, 1956 (Fed.Cir.1988) (disqualification of law firm reviewed under regional law). Under Ninth Circuit law, the standard for review of Judge Keller's refusal to recuse himself is abuse of discretion. United States v. Chischilly, 30 F.3d 1144, 1149-50 (9th Cir.1994).
 
 
 15
 A. Recusal for financial conflict of interest
 
 
 16
 We first address the matter of financial conflict of interest. We agree with Baldwin that appellants' assertion of a financial conflict of interest in this matter borders on the frivolous. Appellants' brief utterly omits any discussion of the key facts and key legal provision concerning this issue. The record establishes that Judge Keller's mother owned a trust which invested in several stocks, among them shares of Masco, the parent company of Baldwin. Judge Keller was the named beneficiary of the trust and thus owned a remainderman interest in the shares. The trust sold the shares in November 1990, two months after Baldwin filed its patent action. Judge Keller did not issue his first substantive order in this case until the end of December 1990. He did not learn of the relationship between Masco and Baldwin until after trial had begun, roughly eighteen months later. When he did, he disclosed to the parties his former remainderman interest in Masco shares, expressed his opinion that the trust's divestiture of the shares well before he became substantively involved in the case or knew of the Masco-Baldwin relationship eliminated any need for recusal, and invited the parties to raise any conflict of interest concerns with him at that point. Notably, Mr. Klayman stated that he did not "wish to make a point of it." Regardless of whether, as Mr. Klayman later pointed out to Judge Keller, § 455(e) prevents waiver by a party of financial conflicts, Mr. Klayman's statement indicates that he initially did not consider recusal to be required.
 
 
 17
 Under these facts, Judge Keller clearly was not required to recuse himself. Section 455(f), also omitted from appellants' brief, provides:
 
 
 18
 Notwithstanding the preceding provisions of this section, if any ... judge ... to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary ... has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the ... judge ... divests himself or herself of the interest that provides the grounds for the disqualification.
 
 
 19
 28 U.S.C. § 455(f). This provision squarely fits the present circumstances. It suggests, in fact, that even if the Masco shares had remained in the trust until Judge Keller discovered the Masco-Baldwin relationship, divestiture by the trust at that point (or relinquishment by Judge Keller of his remainderman interest in those shares) would have avoided the need for disqualification. Appellants' utter failure to address this provision, or the relevant facts on this issue, is inexplicable. In any event, assuming that the trust's ownership of the Masco shares raised a financial conflict under § 455(b), the November 1990 divestiture of those shares eliminated any such conflict and any possible need for recusal on that basis.
 
 
 20
 B. Recusal for alleged antisemitism and anti-Asian bias
 
 
 21
 We turn next to appellants' claim that Judge Keller exhibited antisemitism and anti-Asian bias against appellants and their clients, and therefore was required to recuse himself under §§ 455(a) and (b)(1). "Sections 455(a) and (b)(1) are to be construed together when the ground for recusal is the bias or partiality of the trial judge." United States v. Winston, 613 F.2d 221, 223 (9th Cir.1980) (citing United States v. Olander, 584 F.2d 876, 882 (9th Cir.1978)). Under those provisions, "the trial judge is required to recuse himself only when a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." Winston, 613 F.2d at 223.
 
 
 22
 This determination, in the first instance, "rests within the sound discretion of the [trial] judge." United States v. Sibla, 624 F.2d 864, 868 (9th Cir.1980) (citation omitted). Appellants never directly presented the issue of ethnic or racial bias to Judge Keller as a ground for recusing himself, nor did they afford Judge Keller an opportunity to address this issue.[4] Under the circumstances, we question whether the matter is properly before us on appeal, and "even assuming that [appellants] may raise [a] section 455 recusal claim for the first time on appeal ... we would review the district court's failure to recuse himself under the plain error standard." United States v. Bosch, 951 F.2d 1546, 1548 (9th Cir.1991). In the interest of ensuring that justice not only is impartial but appears so, we have reviewed the record to determine in the first instance whether it would have constituted plain error for Judge Keller to have refused recusal under § 455(a) and (b)(1).
 
 
 23
 The Supreme Court recently elaborated on the type of judicial conduct, and the underlying reasons for that conduct, that warrant recusal for bias:
 
 
 24
 [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile, to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.... Not establishing bias or partiality ... are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune.
 
 
 25
 Liteky v. United States, --- U.S. ----, ----, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). We have thoroughly reviewed the record before us and devoted much consideration and reflection to the parties' contentions. We conclude that appellants have not carried the heavy burden necessary to substantiate their recusal claim under Liteky. While Judge Keller was stern (with counsel for both sides, not just appellants) and imposed less restraint on his comments and criticism than may be desired, we cannot say that his conduct of the proceedings evinced a "deep-seated favoritism or antagonism [toward Asians or Jews] that would make fair judgment impossible." Liteky, --- U.S. at ----, 114 S.Ct. at 1157. Our overall impression from the record and pleadings in this appeal is that Judge Keller grew increasingly impatient with what he considered to be incompetence or lack of forthrightness and that he conducts his courtroom with strict enforcement of the rules.
 
 
 26
 To warrant recusal, bias or prejudice must be directed against a party and bias exhibited against an attorney will only merit recusal when it results in material and identifiable harm to that party's case. See United States v. Burt, 765 F.2d 1364, 1368 (9th Cir.1985); Cintron v. Union Pacific R.R., 813 F.2d 917, 921 (9th Cir.1987). In this case, the record indicates that Judge Keller did not permit his frustration with appellants to interfere with a full trial of their clients' claims and defenses. For example, although sanctioning counsel for delaying the trial in part due to Mr. Frank Su's nonappearance on the scheduled date, the trial judge allowed appellants additional time to prepare Mr. Su and permitted the parties to rearrange the order of witnesses to ensure sufficient preparation time. Moreover, while sanctioning appellants for failing to comply with § 282, Judge Keller nonetheless allowed in much of the prior art of which appellants had failed to notify Baldwin.
 
 
 27
 The trial judge ruled partly in favor of appellants' clients. He found that some of FrankSu's products did not misappropriate Baldwin's trade dress rights, and that some Baldwin products had no protectable trade dress rights. Further, although the trial judge found that FrankSu willfully infringed and misappropriated Baldwin's trade dress, he doubled rather than trebled damages. The trial judge did not award full attorney fees to Baldwin, and stayed execution of the attorney fee sanctions against appellants pending appellate review. Baldwin asserts, and appellants do not dispute, that the trial judge withdrew documents relating to settlement negotiations from evidence in which Mr. Frank Su admitted copying and infringement of Baldwin's designs, despite appellants' failure to object to them. In these circumstances, we find no material and identifiable harm to appellants' clients from any reprimand of appellants by the trial judge.
 
 
 28
 It should be noted, moreover, that appellants rejected an opportunity to have a magistrate judge rather than Judge Keller try the case below. This opportunity came during appellants' belated request for a jury trial on Baldwin's patent claims, which appellants claim they made after they purportedly recognized Judge Keller's alleged bias against appellants and their clients. During the colloquy between appellants and the trial judge concerning the jury trial request, appellants stated that they wanted Judge Keller to preside rather than a magistrate because they "liked" him and felt he had "a good sense of humor. That's important." Despite the trial court's urging, appellants refused to accept a magistrate to preside over the trial. In these circumstances, it ill becomes appellants to assert that Judge Keller's later refusal to recuse himself nullifies all proceedings below.
 
 
 29
 Appellants have moved us to order a complete trial transcript, which they contend is needed to fully inform this court of the bias that allegedly infected the proceedings below. Although ordinarily it is appellants' responsibility to obtain those portions of the record it requires to support its case, Fed.Rule Appellate Procedure, R. 10(b)(1), (2), (4), appellants assert that financial distress, occasioned in part by the monetary sanctions and FrankSu's failure to pay appellants' fees, prevents them from purchasing the transcript.[5] Appellants previously applied to the district court, either on their clients' behalf or their own, four times for a reduced transcript fee. The district court denied these requests, finding that the corporate entities were not eligible to proceed in forma pauperis under Rowland v. California Men's Colony, 506 U.S. 194, 197-98, 113 S.Ct. 716, 719, 121 L.Ed.2d 656 (1993), and that neither appellants nor their clients had provided sufficient objective evidence of distress to establish "exceptional circumstances" warranting in forma pauperis treatment under 28 U.S.C. § 1915.[6]
 
 
 30
 Rather than directly appeal the district court's rulings, appellants instead applied to this court to "compel access to" the transcript and to include it in the Appendix on appeal. After this court twice instructed appellants that "this court will not become involved in the matter of the cost of the transcript of district court proceedings," a motions panel denied appellants' application for access, commenting that the merits panel may revisit the issue. Appellants filed a pending "Renewed Motion for Access to the Trial Transcript and to Supplement the Record to the Merits Panel," purportedly pursuant to this statement.
 
 
 31
 As the trial judge stated in his orders denying appellants relief on this issue, appellants may seek payment of transcript fees by the United States only when specifically authorized by statute. The statutory authority for such relief is 28 U.S.C. § 1915 ("Proceedings in forma pauperis"), which gives the federal courts discretion to direct payment by the United States of the expenses of printing the record on appeal, if such printing is required by the appellate court. See 28 U.S.C. § 1915(b).[7] Under Rowland, K & A, a professional corporation, clearly is not entitled to proceed in forma pauperis. Individuals such as Mr. Klayman must substantiate their claims of financial distress to obtain in forma pauperis treatment. Mr. Klayman has not done so. The documentation Mr. Klayman submitted in support of his claim of financial distress is insufficient to warrant taxing the Government with the considerable estimated cost of obtaining those portions of the transcript not in Baldwin's possession.[8] Accordingly, we deny appellants' Renewed Motion for Access to the Transcript.
 
 
 32
 In the absence of a complete trial transcript, appellants have sought to build their bias case largely on sources entirely unrelated to the proceedings below--in particular, Judge Keller's involvement in the sanctioning of Steven Yagman, a Jewish attorney in California, and the local bar's general assessment of Judge Keller's skill and competence on the bench. Such sources are not relevant to the issue of whether Judge Keller exhibited bias or prejudice against appellants' clients warranting recusal in this case.[9]
 
 
 33
 Appellants also have appended to their pending motion for access to the transcript the affidavits of Messrs. Richard Carter and Steven Goldstein, who served as witnesses during the trial (Mr. Carter also was President of Decorax, which as noted was a defendant below). The affidavits were executed roughly two years after trial and assert, often in generalized terms, that Judge Keller exhibited bias and behaved improperly throughout the trial. Although Baldwin urges us to reject these affidavits, this court already accepted them as attachments to appellants' August 8, 1994 Response to Baldwin's Motion for Leave to File a Supplement to its Initial Brief. Our review of them in the context of deciding the transcript and bias issues indicates no basis for concluding differently than indicated above.
 
 C. Abuse of discretion--Sanctions
 
 34
 We next turn to appellants' challenges to the monetary and pro hac vice sanctions imposed upon them, reviewing each of the three orders in turn. As with recusal, the imposition of monetary and pro hac vice sanctions in this case raises issues not within our exclusive jurisdiction. We therefore are guided by the law of the Ninth Circuit.
 
 1. December 9, 1991 Order
 
 35
 Judge Keller found that K & A had failed to comply with Local Rule 27.1 in filing an ex parte application for an extension of time to oppose Baldwin's summary judgment motion, three days after the opposition deadline had run. Judge Keller granted an extension to K & A, but assessed against K & A attorney fees and costs incurred by Baldwin in responding to the ex parte application. As noted above, Judge Keller stayed execution of the fee award pending review by this court.
 
 
 36
 Local Rule 27.1 provides that "[t]he violation of or failure to conform to any of these Local Rules ... shall subject the offending party or counsel to such penalties, including monetary sanctions and/or the imposition of costs and attorney's fees to opposing counsel, as the Court may deem appropriate under the circumstances." C.D.Cal.Local R. 27.1. K & A does not dispute that it missed the filing deadline for its opposition, or that it filed the application for extension three days after the filing deadline expired. Nor does it mention that it sought an additional 28 days, rather than the usual 14, and asked, without offering any justification, that Baldwin's reply period be shortened from 7 days to 3. K & A attributes the untimeliness to the error of an associate in the firm, and argues that because it did not act in bad faith, the trial court erred in imposing sanctions.
 
 
 37
 The decision to impose sanctions under Local Rule 27.1 is reviewed for abuse of discretion; underlying fact findings are reviewed for clear error. Attorney fees may only be assessed for a violation of Local Rule 27.1 when the attorney acts in bad faith or willfully disobeys court orders or rules. Zambrano v. City of Tustin, 885 F.2d 1473 (9th Cir.1989) (mere negligence in failing to become admitted to bar of federal district court did not support attorney fees award). In Zambrano, the court stated that "lawyers who willfully, repeatedly, or recklessly disregard court rules or orders may be sanctioned." Id. at 1485.
 
 
 38
 Judge Keller's order finds that appellants' only excuse for missing the filing deadline was that they were involved in extensive business travel. The order clearly demonstrates that Judge Keller considered appellants to have acted recklessly in disregarding or not paying closer attention to the filing deadlines imposed by the court's rules. We note that Judge Keller did grant appellants 13 extra days in which to file their opposition to Baldwin's summary judgment motion, thereby avoiding any prejudice to their clients from appellants' delay. Under these circumstances, Judge Keller did not err or abuse his discretion in issuing the December 9, 1991 sanctions order. We also reject appellants' request that we remand for recalculation of the amount of the sanctions, finding no error in the trial court's acceptance of the 7.75 hours of preparation time submitted by Baldwin.
 
 2. August 25, 1992 Order
 
 39
 Judge Keller also assessed against K & A, under 28 U.S.C. § 1927, Baldwin's fees and costs incurred with respect to (1) a one-day delay in commencement of trial caused by appellants; (2) Baldwin's opposing Mr. Frank Su's unsuccessful motion to dismiss based on lack of personal jurisdiction; (3) Baldwin's Motion in Limine to exclude prior art for which K & A had not provided notice as required under 35 U.S.C. § 282; (4) trial time spent on addressing the Sepco exhibits, which appellants attempted to introduce as "later discovered" prior art despite contradictory testimony from appellants' own witness; and (5) Baldwin's Motion for Sanctions under § 1927. Section 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."
 
 
 40
 K & A argues that Judge Keller abused his discretion by imposing these sanctions without finding subjective bad faith on the part of K & A. K & A also argues that fees for a section 1927 application are not themselves available under that provision.
 
 
 41
 We review all aspects of a sanctions award under section 1927 for abuse of discretion. MGIC Indemnity Corp. v. Moore, 952 F.2d 1120, 1121-22 (9th Cir.1991). Although a finding of bad faith is required to impose sanctions under § 1927, "[k]nowing or reckless conduct meets this standard," and the lack of an explicit finding of bad faith by the trial judge will not preclude sanctions when the record supports such a finding. Id. at 1122 (citations omitted); see also Kanarek v. Hatch, 827 F.2d 1389, 1391 (9th Cir.1987); Toombs v. Leone, 777 F.2d 465, 471 (9th Cir.1985); Optyl Eyewear Fashion Int'l Corp. v. Style Cos. 760 F.2d 1045, 1048, 1051 (9th Cir.1985).
 
 
 42
 In this case, although Judge Keller did not employ the words "bad faith," our review of the record leaves no doubt that he considered K & A's conduct with regard to the proceedings for which sanctions were imposed to be at least reckless. We have carefully considered appellants' arguments to the contrary, but conclude that the record supports Judge Keller's assessment of appellants' conduct. Accordingly, we find that he did not err or abuse his discretion in awarding sanctions against appellants. In addition, we reject appellants' contention, included in certain "transcript access" motions filed with this court but not advanced in their brief on appeal, that appellants were not given adequate opportunity to address the issues identified in the sanctions order; the record indicates that these issues were fully aired below.
 
 
 43
 We also reject appellants' argument that "fees for fees" are not available under section 1927. We have found no authority for such a proposition, and appellants cite none. The statute allows recovery of excess fees incurred as a result of opposing counsel's conduct, and "fees for fees" clearly fall within this description.
 
 3. June 30, 1992 Pro Hac Vice Order
 
 44
 At the close of trial, Judge Keller sua sponte indicated that he intended to issue an order permanently and prospectively barring Mr. Klayman from appearing before him pro hac vice and requiring him to attach a copy of the order to any future pro hac vice applications in the Central District of California. Judge Keller cited the conduct that he felt supported this sanction and allowed Mr. Klayman to respond and to explain or address the conduct cited. After listening to Mr. Klayman's response and following the close of trial, Judge Keller issued the above described order.
 
 
 45
 Mr. Klayman contends, first, that this order has no basis in law. "For a sanction to be validly imposed, the conduct in question must in fact be sanctionable under the authority relied upon." In re Yagman, 796 F.2d 1165, 1182-83 (9th Cir.1986). In issuing the above order Judge Keller cited the pro hac vice rules, which gives the trial judge discretion to grant or deny pro hac vice status. Central District of California Local Rule 2.2.3.1 provides:
 
 
 46
 2.2.3.1 Permission Pro Hac Vice. Any person who is not otherwise eligible for admission to practice before this Court, but who is a member in good standing of, and eligible to practice before, the bar of any United States Court, or of the highest court of any State, Territory or Insular Possession of the United States, who is of good moral character, and who has been retained to appear before this Court, may, upon written application and in the discretion of the Court, be permitted to appear and participate pro hac vice in a particular case.
 
 
 47
 (emphasis added).
 
 
 48
 It is not clear that this rule authorizes Judge Keller's order; the rule appears to address determinations of admission pro hac vice in each individual case. It may be that Judge Keller intended his further citation to his "discretion" to mean his inherent powers to impose sanctions when appropriate. "Any court which has the power to admit attorneys to practice may also sanction them for unprofessional conduct." Standing Committee on Discipline v. Ross, 735 F.2d 1168, 1170 (9th Cir.1984); see also Yagman v. Republic Insurance, 987 F.2d 622, 628 (9th Cir.1993). That power encompasses the authority to suspend an attorney admitted pro hac vice from further practice before the court. United States v. Engstrom, 16 F.3d 1006 (9th Cir.1994) (upholding order suspending attorney admitted pro hac vice from practice before the court for three years).
 
 
 49
 We review the terms of a disciplinary order entered under the court's inherent authority for abuse of discretion. Engstrom, 16 F.3d at 1011; Yagman, 987 F.2d at 628. A court imposing sanctions under its inherent powers must determine that the attorney acted in bad faith. Yagman, 987 F.2d at 628. Mr. Klayman contends that Judge Keller abused his discretion by permanently denying pro hac vice status without finding that Mr. Klayman acted unethically or in bad faith. Although the words "bad faith" are not recited in the order, the order makes clear that the trial judge considered Mr. Klayman to have acted in bad faith, in particular by making certain misrepresentations to the court. For example, Judge Keller found that Mr. Klayman represented to the court that he had never been sanctioned or denied pro hac vice privileges, when in fact his former firm, Klayman & Gurley, P.C., had been sanctioned in a matter handled by Mr. Klayman and two other attorneys of the firm. Mr. Klayman's explanation of his failure to mention the prior sanctions to Judge Keller--that he did not understand the judge's question to cover those sanctions since they were imposed on the firm and not him personally--is unconvincing. That the order was being appealed at the time of Judge Keller's inquiry, or that the order was subsequently vacated at the request of both parties in order to further settlement of the dispute, is irrelevant.
 
 
 50
 We have carefully considered appellants' explanations for the other misconduct cited by the trial judge, and likewise find them insufficient to establish an abuse of discretion in imposing this sanction. With respect to the requirement that Mr. Klayman submit a copy of Judge Keller's order with any future application for admission pro hac vice to the Central District of California, we note that Local Rule 2.3.2 itself requires that "each applicant for permission to appear pro hac vice shall present to the Clerk a written petition containing ... (d) whether the applicant has been subjected to any discipline by any court or administrative body ... (e) whether in the 3 years preceding the application the applicant has applied for permission to practice pro hac vice before any court within the State of California, together with the ... disposition of each such application." Local Rule 2.3.2(d), (e).
 
 
 51
 We also reject appellants' contention, included in their motions concerning access to the transcript but not advanced in their brief on appeal, that this sanction was issued without due process. The record indicates that the items cited in the order were addressed by the trial judge and the parties as they arose during the trial; Mr. Klayman therefore had notice of the court's displeasure and an opportunity to respond both during the trial and, at length, after Judge Keller proposed the sanctions. Cf. Engstrom, 16 F.3d at 1012; Leis v. Flynt, 439 U.S. 438, 442-43, 99 S.Ct. 698, 700-01, 58 L.Ed.2d 717 (1979).
 
 
 52
 D. Baldwin's Cross-Appeal for Full Attorney Fees and Costs under 35 U.S.C. § 285 and 15 U.S.C. § 1117(a)
 
 
 53
 Baldwin argues that cumulative misconduct by appellants, coupled with the district court's finding of willful infringement and FrankSu's failure to obtain advice of counsel on whether Baldwin's patents were valid (a defense raised by FrankSu at trial), warranted a finding of "exceptional circumstances" under § 1117 of the Lanham Act and § 285 of the Patent Statute.[10] Baldwin asserts that the district court erred in not making such a finding and not awarding Baldwin full attorney fees for the proceedings below.
 
 
 54
 We apply the law of this circuit in reviewing the court's denial of fees under § 285. Whether exceptional circumstances exist under § 285 is a fact issue which we review for clear error. Morton Int'l, Inc. v. Cardinal Chemical Co., 5 F.3d 1464, 1470, 28 USPQ2d 1190, 1195 (Fed.Cir.1993). We find no clear error in the trial court's conclusion that exceptional circumstances did not exist in this case. Although the trial court found willful infringement, which we have held may suffice to find a case exceptional, L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 25 USPQ2d 1913 (Fed.Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993), the court also found that Mr. Frank Su did not know that trade dress is a protectable property right, and that Baldwin's patents and trade dress rights were not strong.
 
 
 55
 We also conclude that Judge Keller did not abuse his discretion in finding, based on his consideration of all of the circumstances of the case before him, that the case was not "exceptional" under § 1117(a) of the Lanham Act, an issue that we review with guidance from Ninth Circuit law. See Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1133 (9th Cir.1986) (court did not abuse its discretion in denying fees under § 1117(a) even though defendants knew goods they sold were not genuine Polo).
 
 
 56
 E. Whether the District Court Abused its Discretion in Not Granting Baldwin Full Attorney Fees under 28 U.S.C. § 1927
 
 
 57
 Baldwin argues that the trial judge abused his discretion in not awarding Baldwin full attorney fees under section 1927 based on appellants' "pervasive vexatious conduct." The trial judge acknowledged that full attorney fees "could very well warrant extremely significant award of attorneys [sic] fees" but decided to award only fees for individual instances of vexatious conduct that multiplied the proceedings. The trial judge's determination not to award full fees to Baldwin was based on a thorough appreciation of appellants' conduct and its effect on the proceedings below, and we will not disturb that determination here.
 
 
 58
 F. Baldwin's Request for Fees and Costs under Fed.R.App.P. 38
 
 
 59
 Baldwin also seeks full fees and costs incurred in defending against this appeal and in responding to appellants' numerous and often improper filings in this court. We wish to make absolutely clear that appellants' conduct falls far short of the standards we expect from counsel appearing before us. Throughout this appeal, appellants have taken considerable liberties with the record and mischaracterized statements therein; peppered the court with motions seeking a free transcript that do not acknowledge or comply with the standards for in forma pauperis treatment under 28 U.S.C. § 1915; failed to file a timely Reply Brief despite an extension and then attempted to insert their arguments on reply in their transcript access motions; and, most deplorably, launched a charge of financial bias and conflict of interest against a district judge while utterly failing to mention, much less address, the provisions of law governing that serious allegation.
 
 
 60
 Nevertheless, we decline to grant Baldwin fees for litigating this appeal. Baldwin's refusal to cooperate in providing at least that portion of the transcript in its possession to appellants at the cost of copying is, in our view, poor practice (Baldwin agreed to provide its portion of the transcript to appellants at the $9,000 cost Baldwin paid for transcription). Given this court's urging that the parties cooperate in order to permit the fullest consideration of this appeal, we conclude that the proceedings on appeal were at least in part exacerbated by Baldwin's unwillingness to cooperate. We therefore deny Baldwin's fees for this appeal, although we award Baldwin its costs.
 
 CONCLUSION
 
 61
 The December 9, 1991 and August 25, 1992 Orders imposing attorney fees and costs upon K & A are affirmed. The June 30, 1992 Order permanently barring Mr. Klayman from appearing pro hac vice before Judge Keller is affirmed. The trial court's finding that this case was not "exceptional" and therefore did not warrant full attorney fees under the Patent Statute or Lanham Act, is affirmed. Baldwin's request for fees under Fed.R.App.P. 38 is denied. The judgment of the district court is
 
 
 62
 AFFIRMED.
 
 
 63
 Costs are awarded to Baldwin.
 
 
 
 [1]
 FrankSu Enterprise Corporation, Frank Su and Decorax also appealed initially. This court dismissed that appeal on November 12, 1993, however, because they had released K & A as their counsel and did not acquire new counsel or, in the case of Mr. Frank Su, apply to appeal pro se. See Fed.Cir.R. 47.3(a)
 
 
 [2]
 Unless otherwise indicated, all citations are to the 1994 edition of the United States Code
 
 
 [3]
 Clients Frank Su and Franksu Enterprise Corp. are Taiwanese. The president of Decorax, a key defense witness, is Jewish, as is Mr. Klayman
 
 
 [4]
 There was one indirect reference to ethnic bias in a comment that Mr. Klayman made to Judge Keller in listing the grounds for his recusal motion. Mr. Klayman asserted that Judge Keller "raised the issue that you treat everybody the same regardless of national origin. Your Honor, that was a non sequitur in that context." Mr. Klayman's other assertions of bias with respect to the way Judge Keller evaluated the credibility of witnesses or criticized appellants' performance contained no direct reference to ethnic or religious bias on the part of Judge Keller
 
 
 [5]
 The district court has informed this court that there is no transcription of the trial tapes at the district court; therefore appellants would be required to purchase a copy from the court reporter, as did Baldwin. Despite this court's urging, the parties did not reach a cost-sharing arrangement regarding those portions of the trial transcript in Baldwin's possession
 
 
 [6]
 See Weller v. Dickson, 314 F.2d 598, 600 (9th Cir.), cert. denied, 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72 (1963). The district court also found that corporations FrankSu and Decorax were not qualified to proceed in forma pauperis under 28 U.S.C. § 1915. Rowland v. California Men's Colony, 506 U.S. 194, 197-98, 113 S.Ct. 716, 719, 121 L.Ed.2d 656 (1993)
 
 
 [7]
 Contrary to appellants' assertion in an earlier version of their "Motion for Access," Federal Circuit Rule 11(a) does not authorize this court to order transcription of the trial tapes at the expense of the federal government when Appellants have made no showing that they are entitled to such relief under 28 U.S.C. § 1915. Rule 11(a) only authorizes the court to order transmission of the existing record; in this case, no record in the form of a complete trial transcript exists to be transmitted. Federal Rule of Appellate Procedure 10(e) is similarly unavailing. We note that appellants did not attempt to avail themselves of Federal Rule of Appellate Procedure 10(c), which allows a party, when a transcript is unavailable, to "prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." Fed.R.App.P. 10(c). The statement must be served on the appellee, who may object, and the statement and any objections are submitted to the district court for settlement and approval and inclusion in the record on appeal. Id
 
 
 [8]
 Baldwin offered to provide the court with a copy of the portion of the transcript they obtained below, which comprises roughly 60 percent of proceedings. In light of appellants' contention in prior motions that review of the entire transcript is necessary to adequately evaluate their claims, and that use of only Baldwin's submissions is inadequate, we decline Baldwin's offer
 
 
 [9]
 If anything, the bar evaluations provided by Appellant suggest that the sanctions in this case may have resulted from Judge Keller's practice of strict enforcement of local rules, not ethnic bias against these particular appellants or their clients. E.g., Almanac of the Federal Judiciary, Vol. 1 (1991-1), at 48 (quoting attorney's comment that one should "[f]ollow local rules precisely or be sanctioned.")
 
 
 [10]
 Section 1117(a) of the Lanham Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party" who has established a violation of the rights of a trademark registrant. 15 U.S.C. § 1117(a). Section 285 of the Patent Statute contains identical language authorizing an award to the prevailing party in a patent suit. 35 U.S.C. § 285