Slip Op. 02 - 31

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - -x
SAVE DOMESTIC OIL, INC.,
                                            :

                        Plaintiff,
                                            :

            v.
                                            :

UNITED STATES,                              :

                        Defendant,          :

            -and-                           :  Court No. 99-09-00558

API AD HOC FREE TRADE COMMITTEE; SAUDI      :
ARABIAN OIL COMPANY; PETROLEOS de VEN-
EZUELA, S.A. and CITGO PETROLEUM COR-       :
PORATION; PETROLEOS MEXICANOS, PMI CO-
MERCIO INTERNACIONAL S.A. de C.V. and       :
PEMEX EXPLORACIÓN y PRODUCCIÓN; MOBIL
CORPORATION; EXXON CORPORATION; SHELL       :
OIL COMPANY; TEXACO INC.; CHEVRON COR-
PORATION; and BP AMOCO,                     :

                Intervenor-Defendants.  :
- - - - - - - - - - - - - - - - - - - - -x

<u>Memorandum & Order</u>


                                Dated:  March 22, 2002


        Wiley, Rein & Fielding (<u>Charles Owen Verrill, Jr</u>. and <u>Tim-
othy C. Brightbill</u>) for the plaintiff.

        Shearman & Sterling (<u>Thomas B. Wilner</u>, <u>Neil H. Koslowe</u>,
<u>Perry S. Bechky</u> and <u>Rachel F. Bond</u>) for intervenor-defendants
Petroleos de Venezuela, S.A. and CITGO Petroleum Corporation.


        AQUILINO, Judge:  This court's filing of a petition with

the Supreme Court of the United States for a writ of certiorari to

the Court of Appeals for the Federal Circuit ("CAFC") has been

followed by Intervenors' Motion to Disqualify, filed herein by

counsel for intervenor-defendants Petroleos de Venezuela, S.A. and

CITGO Petroleum Corporation ("Venezuela").  Only the plaintiff has

responded to the motion, which avers that, by

> filing a *pro se* petition for a writ of certiorari, which
> seeks Supreme Court review of the mandamus order vacating
> a criminal contempt inquiry in this proceeding, his Honor
> may inadvertently but certainly irretrievably have become
> a party and a lawyer in this proceeding forcefully advo-
> cating positions adverse to those of Defendant the United
> States.   In  such  circumstances,  disqualification  is
> required by 28 U.S.C. §§455(b)(5)(i), (ii).  This motion
> does not raise any claim against his Honor of actual bias
> or prejudice.

> Quite apart from Section 455(b), his Honor's dis-
> qualification is also required under Section 455(a).
> That Section mandates disqualification when a judge's
> impartiality "*might reasonably be questioned*" (emphasis
> added).  Because the purpose of Section 455(a) is to
> preserve public confidence in the judicial system by
> avoiding even the appearance of impropriety, disqualifi-
> cation under it turns on facts that would create doubts
> about  the  judge's  impartiality  in  the  mind  of  the
> reasonable man-in-the-street, rather than the mind of the
> judge or one of the litigants.  Where a judge personally
> intervenes  in  ongoing  litigation  to  challenge  and
> forcefully advocate before a higher court a position that
> is diametrically opposed to the interests of one of the
> parties  to  that  litigation,  the  ability  of  the  judge
> impartially to adjudicate other claims against that party
> in the litigation "might reasonably be questioned" by an
> informed, objective observer. Here, Intervenors respect-
> fully submit that, because his Honor has filed a *pro se*
> petition for certiorari forcefully advocating a position
> on the initiation of a criminal contempt inquiry that is
> diametrically  opposed  to  the  interests  of  the  United
> States, a party Defendant, his Honor's ability impar-
> tially to adjudicate other claims against the United
> States in this proceeding "might reasonably be ques-
> tioned" by an informed, objective observer.

> Disqualification from the captioned case is there-
> fore required by law.

I

From the beginning, this case has been marred by the government.  It dismissed the petition(s) of Save Domestic Oil, Inc. ("SDO") for relief under the Trade Agreements Act of 1979, as amended, without even a completely-proper preliminary analysis of the claims therein.  When the court granted SDO's appeal from that summary dismissal to the extent of remand to the International Trade Administration, U.S. Department of Commerce ("ITA") for contemplation of commencement of an ordinary and regular preliminary investigation by that agency (and referral for investigation by the International Trade Commission), Save Domestic Oil, Inc. v. United States, 24 CIT ____, 116 F.Supp.2d 1324 (2000), or at least to explain its reasons fully in accordance with law for not doing so, the defendant noticed an unlawful appeal to the CAFC from that interlocutory remand order which was joined by Venezuela and other intervenor-defendants.  Defendant's concomitant motion(s) for a stay pending its prosecution of that appeal were denied by this court sub nom. Save Domestic Oil, Inc. v. United States, 24 CIT ____, 122 F.Supp.2d 1375 (2000), and never granted by the CAFC, which ultimately came to conclude that it had no jurisdiction in the matter.

By the time that appellate decision slipped down unpublished, July 31, 2001, the defendant had been in apparent complete disregard, if not contempt, of this court's interlocutory order of remand for the better part of a year, whereupon counsel

were ordered to explain that phenomenon.  Initially, they refused, and then proceeded to petition the CAFC for writs of prohibition, one of which was granted *sua sponte*, followed soon thereafter by another order, unpublished *per curiam*, directing that the Court of International Trade cease and desist any criminal contempt proceedings, which was based upon a second CAFC panel's seeming conclusion that the mere intimation of such proceedings is an abuse of discretion.

Since (1) Congress has provided that the Court of International Trade

> shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority . . . as --
>
> . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command[1;]

(2) the second CAFC panel seemingly disregarded the first panel's conclusion that their court had no jurisdiction in the matter; (3) government employees do not have license to completely disregard or willfully disobey court orders; (4) the CAFC should not be at liberty to preclude another court from attempting to ensure that its lawful orders are obeyed; and (5) CAFC appellate jurisdiction does not extend to obstruction of discovery in the Court of International Trade, this court was constrained to file its petition with the Supreme Court for relief from the second appellate panel's unfounded order.

---

[1] 18 U.S.C. §401.

That petition has been denied <u>sub</u> <u>nom</u>. <u>United States</u>
<u>Court of Int'l Trade v. United States</u>, 122 S.Ct. 930 (2002).

II

As recited above, Venezuela's motion to disqualify pur-
ports to be based upon the following statutory provisions:

> (a) Any . . . judge . . . of the United States shall
> disqualify himself in any proceeding in which his
> impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the follow-
> ing circumstances:

>                    *    *    *

> (5) He or his spouse, or a person within the third
> degree of relationship to either of them, or the spouse
> of such person:

>> (i) Is a party to the proceeding or an
>> officer, director, or a trustee of a party;

>> (ii) Is acting as a lawyer in the proceed-
>> ing.  . . .

28 U.S.C. §455.

A

The motion's primary pincer would be subsection (b),
which, it is said,

> sets forth a simple rule:  No person can be both judge
> and party, or judge and lawyer, in the same proceeding.

> The disqualification provisions of 28 U.S.C. §455-
> (b) operate automatically.[2]

---

[2] Intervenors' Motion to Disqualify, p. 6.  The motion also
points out, <u>id</u>. at 7, that subsection 455(e) provides that "[n]o
. . . judge . . . shall accept from the parties to the proceeding
a waiver of any ground for disqualification enumerated in
subsection (b)."

Indeed.  Hence, the only discussion herein can be about the facts, and whether or not they are within the statute's purview and meaning of "party", "['same'] proceeding" and "lawyer".

If these provisions require "inexorable"[3] enforcement, which this court accepts as the law, strictly construed they do not govern the phenomenon Venezuela attempts to rely on.  Clearly, the court neither was, nor has become, either a party to or lawyer in the case bearing CIT No. 99-09-00558, the only parties to which are all named in the caption above, the gravamen of which is and has been judicial review of the ITA's Dismissal of Antidumping and Countervailing Duty Petitions:  Certain Crude Petroleum Oil Products From Iraq, Mexico, Saudi Arabia, and Venezuela, 64 Fed. Reg. 44,480 (Aug. 16, 1999).  And those parties and their respective lawyers all strive to protect their particular substantive rights within the confines of that case and the law which governs its resolution.

The court's concern, on the other hand, is and has been the same as in all matters that come before it, namely, that the parties thereto engage in proper practice and orderly procedure. When it became apparent that the defendant herein had completely disregarded and/or willfully disobeyed the court's lawful inter-locutory order of remand to the ITA for some 259 days, counsel were necessarily ordered to show cause for such inaction.  Their re-

---

[3] Intervenors' Motion to Disqualify, p. 7.

sponse, in the main, was to obstruct attempted basic, relevant discovery on that issue, retreating in haste to the CAFC with a disingenuous claim that this court had

> threatened to hold in **criminal** contempt all present and former officials involved in the government's decision to appeal the remand order.[4]

That is, the government fomented a new proceeding, which was given CAFC Miscellaneous Docket No. 679 (as opposed to that court's docket number 01-1091, which attached to defendant's prior, unlawful, attempted appeal on the merits of CIT No. 99-09-00558). That court's *sua sponte* order in No. 679 did contain an invitation within the meaning of Federal Rule of Appellate Procedure 21(b)(4) or a direction pursuant to CAFC Rule 21(a)(5) to respond to defendant's petition in chief, which this court was thus constrained to do. The Statement on Behalf of United States Court of International Trade (Aug. 30, 2001) explained at length the precise lie of the government's new proceeding and questioned the CAFC's jurisdiction to sustain it, in part given the first panel's decision on July 31, 2001 regarding lack of jurisdiction.

The second panel seemingly paid that lynchpin issue no heed in thereafter deciding to direct the "Court of International Trade . . . to vacate its orders initiating criminal contempt pro-

---

[4] Petition for a Writ of Mandamus to the United States Court of International Trade in No. 99-09-00558, Judge Thomas J. Aquilino, Jr., p. 2 (Aug. 17, 2001) (emphasis in original).

ceedings."   This unfounded intervention compelled its object to petition the Supreme Court of the United States to set it aside -- in the interests of proper practice and orderly procedure.  See generally Petition for Writ of Certiorari, *In re* United States *ex rel.* United States Court of International Trade (Nov. 1, 2001), U.S. No. 01-684 (Nov. 8, 2001).

        Considering Venezuela's instant motion in its most favorable light shows that certiorari petition to be at the core of its present position under 28 U.S.C. §455(b).   See supra and Intervenors' Motion to Disqualify, pp. 9-11.   That is, the motion recognizes the existence of Federal Rule of Appellate Procedure 21(b)(4) and the invitation/direction of the CAFC thereunder (if not its own Rule 21(a)(5)) in concluding that this "Court's statement to the Federal Circuit may not have created a disqualification problem."  Id. at 8.  Rather, the motion points to the attempted invocation of Supreme Court review pursuant to 28 U.S.C. §1254(1) *viz.*

> [b]y writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree[,]

and argues therefrom that this court "has thus invoked the status of a party by seeking review under [the foregoing provision], which is available only to a 'party'".  Id. at 10.  The motion also relies on the definition of "proceeding" found in 28 U.S.C. §455(d)(1), which "includes pretrial, trial, appellate review, or other stages of litigation".

On its face, this definition is broad enough to encompass the proceeding instigated by the government in the CAFC, and which caused this court to become involved and thereafter the court of appeals to become the object of the Supreme Court petition, but that proceeding, now concluded, had no bearing on the merits of CIT No. 99-09-00558. The only case Venezuela's motion considers "instructive"[5] on this issue is United States v. Craig, 875 F.Supp. 816 (S.D.Fla. 1994), a case involving an apparent disagreement between judges in neighboring federal districts in Florida as to who should and would preside over a criminal trial of some 30 defendants. When the judge to whom the case was assigned after it was ordered transferred sided with the prosecution regarding the changed venue, the defendants obtained a writ from the Court of Appeals for the Eleventh Circuit prohibiting retransfer and moved for that judge's removal from the restrained case on the ground that he had violated the Circuit's rule governing responses to mandamus petitions. The government then joined in that motion, whereupon the chief judge of the transferee district court ordered the case reassigned, but not on the basis of 28 U.S.C. §455(b), rather subsection (a), supra. Compare 875 F.Supp. at 817 with id. at 818. In short, that case is hardly apposite here. The rule remains that, "[u]nlike §455(a), §455(b) requires an actual interest or bias on the part of the judge"[6], which is not alleged

_____

[5] Intervenors' Motion to Disqualify, p. 7.

[6] Hoang v. Ummel, No. 01-3039, 2001 WL 1631716, at *2 (7th Cir. Dec. 17, 2001).

herein.  See, e.g., Intervenors' Motion to Disqualify, p. 2 ("This motion does not raise any claim against his Honor of actual bias or prejudice").

B

Hence, the secondary prong of Venezuela's motion is the more subjective standard of 28 U.S.C. §455(a), supra, to wit, that a judge's "impartiality might reasonably be questioned."  That standard was considered and discussed at length in Liteky v. United States, 510 U.S. 540 (1994), which affirmed the judgment of the Court of Appeals for the Eleventh Circuit, if not its pristine holding that "*matters arising out of the course of judicial proceedings are not a proper basis for recusal*", 973 F.2d 910 (1992), citing its precedents United States v. Alabama, 828 F.2d 1532 (11th Cir. 1987), cert. denied, 487 U.S. 1210 (1988); In re Corrugated Container Antitrust Litigation, 614 F.2d 958 (5th Cir.), cert. denied, 449 U.S. 888 (1980); Davis v. Board of School Comm'rs of Mobile County, 517 F.2d 1044 (5th Cir. 1975), cert. denied, 425 U.S. 944 (1976).  The decision of the Supreme Court in Liteky is that the "extrajudicial source" doctrine applies to section 455(a) even though it concedes "there is not much doctrine to the doctrine."  510 U.S. at 554.  Stated another way, since

> neither the presence of an extrajudicial source neces-
> sarily establishes bias, nor the absence of an extra
> judicial source necessarily precludes bias, it would be
> better to speak of the existence of a significant (and
> often determinative) "extrajudicial source" *factor*, than
> of an "extrajudicial source" *doctrine*, in recusal juris-
> prudence.

> . . . It is enough . . . to say the following: First,
> judicial rulings alone almost never constitute a valid
> basis for a bias or partiality motion.  See <u>United States
> v. Grinnell Corp</u>., 384 U.S.[563,] 583 [1966].  In and of
> themselves (<u>i.e</u>., apart from surrounding comments or
> accompanying opinion), they cannot possibly show reliance
> upon an extrajudicial source; and can only in the rarest
> circumstances evidence the degree of favoritism or
> antagonism required . . . when no extrajudicial source is
> involved.  Almost invariably, they are proper grounds for
> appeal, not for recusal.  Second, opinions formed by the
> judge on the basis of facts introduced or events occur-
> ring in the course of the current proceedings, or of
> prior proceedings, do not constitute a basis for a bias
> or partiality motion unless they display a deep-seated
> favoritism or antagonism that would make fair judgment
> impossible.  Thus, judicial remarks during the course of
> a trial that are critical or disapproving of, or even
> hostile to, counsel, the parties, or their cases,
> ordinarily do not support a bias or partiality challenge.
> They *may* do so if they reveal an opinion that derives
> from an extrajudicial source; and they *will* do so if they
> reveal such a high degree of favoritism or antagonism as
> to make fair judgment impossible.  . . .

<u>Id</u>. at 554-55 (emphasis in original).


Venezuela's instant motion would disregard this disposi-

tive opinion of the Supreme Court, claiming that the

> "extrajudicial source" factor has no relevance in the
> present case . . . because the actions taken by his Honor
> which warrant disqualification under §455(a) do not
> consist of judicial rulings or judicial remarks made by
> his Honor.

Intervenors' Motion to Disqualify, p. 13 n. 12.  But, if this is

what the record developed to date at bar reflects, the movants'

focus must, by definition, be *extra*judicial.  As indicated above,

the motion takes the position that,

> by personally filing a petition for a writ of certiorari
> in the Supreme Court, his Honor has aligned himself
> against a party here, namely, the United States.  His

> Honor has also forcefully advocated in support of his
> petition. Such personal involvement by his Honor to
> maintain his Honor's initiation of a criminal contempt
> inquiry against the United States and its counsel has,
> unfortunately, created a circumstance in which his
> Honor's impartiality "*might* reasonably be questioned"
> within the meaning of Section 455(a)(emphasis added).
> . . .

Id., p. 13.

Whatever the label, whether extra- or intrajudicial, parties seeking recusal bear a heavy burden to substantiate their claims. E.g., Baldwin Hardware Corp. v. Franksu Enterprise Corp., 78 F.3d 550, 557 (Fed.Cir.) cert. denied sub nom. Klayman & Assocs., P.C. v. Baldwin Hardware Corp., 519 U.S. 949 (1996). Here, little is presented by Venezuela beyond that quoted verbatim from its motion above -- in the context stated, namely, attempting to assure proper practice and orderly procedure by all parties (and by the courts, as well). Surely, such traditional and necessary pursuit cannot, *per se*, be ground for grant of a motion to recuse. As the Supreme Court has concluded:

> . . . *Not* establishing bias or partiality, however, are
> expressions of impatience, dissatisfaction, annoyance,
> and even anger, that are within the bounds of what
> imperfect men and women, even after having been confirmed
> as federal judges, sometimes display. A judge's ordinary
> efforts at courtroom administration - even a stern and
> short tempered judge's ordinary efforts at courtroom
> administration - remain immune.[7]

---

[7] Liteky v. United States, 510 U.S. at 555-56 (emphasis in original). Cf. United States v. Grinnell, 384 U.S. 563, 583 (1966):

> . . . [B]ias and prejudice to be disqualifying must stem
> from an extrajudicial source and result in an opinion on
> the merits on some basis other than what the judge
> learned from his participation in the case.

III

Denial of Venezuela's motion as presented, however, does not necessarily keep the above-captioned case on the best track to final judgment.  The focus of that motion pursuant to 28 U.S.C. §455 is on the undersigned.  The concern of this court, on the other hand, remains with the parties, in particular the defendant, which has not dispelled its apparent contempt -- in violation of 18 U.S.C. §401, supra.  Indeed, the government's unacceptable stance during the months preceding the court's order to show cause became all the more patent once its counsel appeared in response thereto and also precipitously dragged the matter before the CAFC, where they misrepresented the salient facts and even argued, among other things, that, if there were a basis for commencing a criminal-contempt proceeding, initially it would be up to them to decide. That implausible tack[8] was sailed on to the Supreme Court, where,

_____

[8] The government's submissions to both the CAFC and Supreme Court emphasized as controlling Young v. United States ex rel. Vuitton et Fils, S.A., 481 U.S. 787 (1987). But that case simply stands for the proposition that

> counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order.

481 U.S. at 790.  While that opinion goes on to aver that "courts can reasonably expect that the public prosecutor will accept the responsibility for prosecution", id. at 801, it also recognizes that Federal Rule of Criminal Procedure 42(b) does not require such a referral.  That is,

> the rationale for the appointment authority is necessity. If the Judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that Branch declined prosecution.  . . .

Id.  Especially when that branch itself has committed the affront!

in opposing a writ of certiorari, the Solicitor General added arguments to the effect (a) that the object of defendant's extraordinary petition(s) to the CAFC was not really a party[9], even though personally named and served in that court's Miscellaneous Docket No. 679 and ordered or invited to respond therein, and (b) that the

> CIT has neither sought nor received the authorization of the Solicitor General to file a certiorari petition.

Brief for the United States in Opposition, p. 22 (Dec. 2001). While accurate, not surprisingly, to have ended its formal opposition to this court's petition to the Supreme Court of the United States on this last bit of legerdemain is perhaps as good an indication as any of the continuing stance of the defendant herein. To be sure, the petitioner *cum* respondent government did not explain to either appellate court why it failed to comply with this court's lawful interlocutory order of remand for some 259 days after a stay had been duly denied.

Given the indifference of those courts in Washington, however, any attempt to even discover the details of that dereliction of proper practice and orderly procedure, let alone consider possible remedies based thereon, seems at an end herein, which circumstance thus simply serves as another reminder of just how important lawyers are to the always-delicate judicial pursuit of justice. The more they themselves become the partisans, the less

---

[9] This particular contention, of course, runs contrary to that of Intervenors' Motion to Disqualify, supra.

they are genuinely and reliably officers of a court and that worthy

process.  As was stated many years ago:

> . . . Of all classes and professions, the lawyer is most
> sacredly bound to uphold the laws.  He is their sworn
> servant; and for him, of all men in the world, to
> repudiate and override the laws, to trample them under
> foot and to ignore the very bands of society, argues
> recreancy to his position and office, and sets a perni-
> cious example to the insubordinate and dangerous elements
> of the body politic.  It manifests a want of fidelity to
> the system of lawful government which he has sworn to
> uphold and preserve.   . . .

Ex parte Wall, 107 U.S. 265, 274 (1883).  While the context of that

case was most severe, this opinion continues to have currency in

this country's capital.  See, e.g., Johnston, Lawyer Discipline by

the Numbers, Legal Times, p. 18 (March 4, 2002).

Had this court been faced with deciding Liteky v. United

States, supra, it may well have subscribed to the concurring

opinion of four justices, 510 U.S. at 557 et seq., that their col-

leagues in the majority placed undue emphasis upon the source of

the challenged mindset in determining whether disqualification is

mandated by 28 U.S.C. §455(a)[10] and that the

> reach of §455(a) is broader than that of §455(b).  One of
> the distinct concerns addressed by §455(a) is that the
> appearance of impartiality be assured whether or not the
> alleged disqualifying circumstance is also addressed
> under §455(b).  In this respect, the statutory scheme
> ought to be understood as extending §455(a) beyond the
> scope of §455(b), and not confining §455(a) in large
> part, as the Court would have it.

---

[10] Liteky v. United States, 510 U.S. 540, 567 (1994) (Kennedy,
J., concurring in judgment).  Cf. id. at 563, 566.

510 U.S. at 567 (Kennedy, J., concurring in judgment).  Whatever the controlling views as to the purview of those statutory sections, each of the U.S. circuit courts of appeals applies abuse of discretion as the standard of review for matters of recusal.  See, e.g., In re Allied-Signal Inc., 891 F.2d 967, 970 (1st Cir. 1989), cert. denied sub nom. ACW Airwall, Inc. v. U.S. Dist. Court for Dist. of Puerto Rico, 493 U.S. 957 (1990); In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir. 1988); Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1032-33 (3d Cir. 1997); United States v. DeTemple, 162 F.3d 279, 283 (4th Cir. 1998), cert. denied, 526 U.S. 1137 (1999); In re Billedeaux, 972 F.2d 104, 105 (5th Cir. 1992); United States v. Hartsel, 199 F.3d 812, 815 (6th Cir. 1999), cert. denied, 529 U.S. 1070 (2000); In re Hatcher, 150 F.3d 631, 635 (7th Cir. 1998); In re Kansas Pub. Employees Retirement Sys., 85 F.3d 1353, 1358 (8th Cir.), cert. denied, 519 U.S. 948 (1996); Leslie v. Grupo ICA, 198 F.3d 1152, 1160 (9th Cir. 1999); Mitchael v. Intracorp., Inc., 179 F.3d 847, 860 (10th Cir. 1999); United States v. Bailey, 175 F.3d 966, 968 (11th Cir. 1999); United States v. Pollard, 959 F.2d 1011, 1031 (D.C.Cir.), cert. denied, 506 U.S. 915 (1992);  Baldwin Hardware Corp. v. Franksu Enterprises Corp., 78 F.3d 550, 556 (Fed. Cir.), cert. denied sub nom. Klayman & Assocs., P.C. v. Baldwin Hardware Corp., 519 U.S. 949 (1996).

Exercise of any permissible discretion in this regard is always governed by the interests of justice.  In this case, there

is no basis for confidence that whatever further decision on the merits, either interlocutory or final, the facts and the law may dictate would be carried out by the defendant, at least pending further review upon proper and orderly appeal to higher authority. This loss of confidence is exacerbated by the fact that the government has the primary responsibility under the Trade Agreements Act of 1979, as amended, to buffer the domestic and foreign competing interests in international trade, with the judicial relief provided in regard thereto essentially secondary and equitable.

Amelioration of this dilemma thus may not be possible in the aftermath of the CAFC's interference.  In fact, all that may remain for the undersigned is to recall an adage derived from astute observation of another attempt at orderly, civil society, to wit, "*Il est dangereux d'avoir raison sur un sujet pour lequel les autorites établiés ont tort*", and to invite the chief judge to consider reassigning to another judge what remains of this case in the Court of International Trade.

So ordered.

Dated: New York, New York
       March 22, 2002

_____
                                        Judge