**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Keith T. ENGSTROM; Sheryl**
**L. Engstrom, Defendants,**

**William A. COHAN, Esq., Appellant.**

**In re William A. COHAN,**
**Esq., Appellant.**

**Nos. 92–30312, 92–36816.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 1, 1993.

Decided Feb. 11, 1994.

---

8. Nothing in this opinion should be viewed as an opinion on the wisdom or advisability of releasing Morales on parole.

William A. Cohan, Cohan & Greene, Encinitas, California; Eugene G. Iredale, San Diego, California, for the appellant.

Andrew R. Hamilton, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

Before: WALLACE, Chief Judge, WRIGHT and NOONAN, Circuit Judges.

WALLACE, Chief Judge:

Cohan appeals from the district court's order holding him in criminal contempt, entered pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure. He also appeals from the district court's order revoking his permission to practice in the Western District of Washington for three years, entered pursuant to the court's authority to sanction lawyers for unprofessional conduct. *Standing Committee on Discipline v. Ross*, 735 F.2d 1168, 1170 (9th Cir.) (*Ross*), *cert. denied*, 469 U.S. 1081, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984). We have jurisdiction over Cohan's timely appeals pursuant to 28 U.S.C. §§ 1291 and 1294(1). We affirm the revocation of Cohan's permission to practice, but reverse the order holding him in criminal contempt, and remand for further proceedings.

I

The District Court for the Western District of Washington granted Cohan *pro hac vice* status to represent Keith and Sheryl Engstrom in a criminal case involving federal tax laws. A jury convicted both Engstroms, but we reversed on appeal because the government had failed to comply with 26 U.S.C. § 6103(h)(5). On remand, the case was transferred to the Honorable Jack E. Tanner for trial.

It took little time for Cohan to begin his questionable conduct. During voir dire, Cohan stated in the presence of the jury, "Your Honor, at this time I am going to move to disqualify you from this case based on 28 United States Code, Section[s] 144 and 455.... You have demonstrated ... an inability to be impartial." After the jury was

excused, Cohan continued to argue, "This court is not paying any attention to the rules...." In reply to Judge Tanner's response he stated, "Well, that doesn't mean Your Honor has gotten the message."

For purposes of the contempt appeal, however, the critical part begins during Cohan's opening statement to the jury, when he declared:

Mr. Engstrom is a black and white kind of guy. He wants to see it in black and white. He believes that we are supposed to have a government of laws, not a government of men. That if you can't understand what a law says, you can't be required to do what that law supposedly says, just because some judge tells you that.

Furthermore, Mr. Engstrom will tell you that he believes that the judges in the United States, like this Judge, have participated in [a] conspiracy to defraud the American people, to impose a duty on the American public that was never imposed by a law.

The court instructed Cohan to limit his opening statement to the evidence that he would produce and advised him that his statements were improper. Cohan responded, "No it's not ... I wish to continue without interruption...."

Then he stated:

Mr. Engstrom will also tell you that the Internal Revenue Service maintain[s] systems of records on all people in the United States concerning all of their financial transactions, or providing access, including federal judges, such as this Judge here, how he sentences, what he does, what he doesn't do, so that the judges in this country are not independent.

The court again admonished Cohan that his statement was improper and instructed him to bring his opening remarks to a close. Cohan then concluded:

Well, as I said, Mr. Engstrom believes that federal judges knowingly put people in jail when their only crime is that they know the law and are not taken in by what Mr. Engstrom believes is a hoax.

But the issue isn't whether Mr. Engstrom is right or wrong. This Judge will instruct you that Mr. Engstrom is wrong. That the law is whatever this Judge tells you it is. Mr. Engstrom will tell you that that cannot be the law. The law has to be in plain understandable English or it's not the law.

These statements were the basis of the court's Rule 42(a) contempt order.

But this is not all of what occurred. At one point during the trial, while the jury was out, the court instructed Cohan to have Engstrom stay seated during the government's direct examination of witnesses. Cohan responded, "Well, you are wrong, Your Honor. You are having delusions if you think he stood up." The court asked Cohan if he had to be told again to have his client remain seated. Cohan remarked, "You've been telling me whatever you want.... Your statements are based on fiction, Your Honor."

Nine times, the court ordered Cohan to remove an array of tax-protestor literature that had not been admitted into evidence from his counsel table and from the jury's sight. Twice in the midst of this exchange Cohan asked whether the court was familiar with the law of the case doctrine. Other statements made to the court by Cohan include: "I don't understand this; I just don't, I hear you, but I can't believe it"; "You are making a mockery of the judicial process"; and, "This is a kangaroo court." Before finally removing the books, Cohan asked if he would be held in contempt if he refused to do so.

Twice, Cohan moved for a mistrial in the jury's presence. In his first motion, he asserted: "You are depriving my clients of a fair trial, Your Honor, and I move for a mistrial on the basis that you are depriving us of a fair and impartial jury by not telling the basis of the defense." In his second motion, Cohan stated, "the Court's rulings have deprived my clients of their right to the effective assistance of counsel."

Out of the jury's presence, Cohan stated:

Again, I am going to move to recuse Your Honor, because—and I will make a record on this—you have been consistently insult-

ing, irrational, unfair. You have demeaned me in front of the jury and during this proceeding. You have made rulings on the admissibility of evidence without looking at the evidence. You do not even make a pretense of considering matters that you have a duty, under the law, to consider before exercising your discretion. During the trial yesterday, most of the day, you appeared to be dozing off. Every time there was an objection to a question, you insisted that the question be read back because you hadn't heard the question, because you were apparently not awake.

In the jury's presence, Cohan questioned, "Do you think this is funny, Judge?" He continued, "Well, you laughed at the question.... I am asking you why you laughed." On other occasions, he asserted, "Your Honor, please, do not accuse me of knowingly doing things improperly"; and "I have done nothing but that, and you are interrupting me and preventing me from doing my job."

Outside of the jury's presence and in response to the court's suggestion that he take another look at a particular case, Cohan told the court, "I have read it several times, Your Honor. I suggest you read it for the first time." In a subsequent exchange, Cohan responded, "To the contrary, Your Honor. I don't know what you are talking about, and I don't think you do, either."

During his closing argument, Cohan explained to the jury: "This Judge is going to instruct you on what the law is here, but even this Judge can make mistakes, and that's why we have Appeals Courts. Nevertheless, you have to follow his instructions."

Three times, the court instructed the jury to disregard Cohan's statements and actions. Four times, the court warned Cohan that his conduct was disruptive or contemptuous.

After excusing the jury for deliberations, the court ordered Cohan to show cause why he should not be held in criminal contempt. Thirty minutes later, the court conducted summary contempt proceedings pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure. The court found that Cohan's opening statements concerning a judicial conspiracy were sufficient to hold him in criminal contempt. Cohan was placed in the custody of the United States Marshal for 24 hours and fined $500.

The next day, Judge Tanner issued Cohan an order to show cause why he should not permanently be denied permission to practice in the Western District of Washington. A hearing was held before Chief Judge Barbara J. Rothstein, who suspended Cohan from practice in the Western District of Washington for three years. The order allowed Cohan to reapply for permission to practice in the district after one year, and permitted him to continue his representation of the Engstroms in this case.

## II

Cohan first challenges Judge Tanner's decision to proceed under Rule 42(a) of the Federal Rules of Criminal Procedure. He argues that any contempt proceedings should have been conducted by another judge pursuant to Rule 42(b). We review for abuse of discretion the district court's "decision to invoke summary contempt procedures, including its consideration of the need for immediate action." *In re Gustafson,* 650 F.2d 1017, 1022 (9th Cir.1981) (*Gustafson*). We conduct our review "in light of the fundamental principles underlying the contempt power." *Id.*

Rule 42(a) states:

A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

Rule 42(b) provides:

A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on

application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

█ The district court may conduct Rule 42(a) proceedings in its discretion as long as the judge saw or heard the contemptuous behavior and the contemptuous behavior was committed in the court's actual presence. *Gustafson,* 650 F.2d at 1021. However, summary contempt procedures should be employed "only after careful consideration and with good reason." *United States v. Flynt,* 756 F.2d 1352, 1363 (9th Cir.1985) (*Flynt*); *see also Gustafson,* 650 F.2d at 1021.

Certain principles guide a district court's exercise of discretion under Rule 42(a). We have previously summarized these principles as follows:

> Rule 42(a) was reserved for exceptional circumstances. The rule is to be applied when the contemnor's conduct is such an open, serious threat to orderly procedure that instant and summary punishment, as distinguished from due and deliberate procedures[,] . . . [is] necessary. Rule 42(b) is to be applied except [in] those unusual situations envisioned by Rule 42(a) where instant action is necessary to protect the judicial institution itself.
>
> . . . . Where courtroom misconduct carries special personal insult to the trial judge, we are watchful for distortion of the judge's sound discretion.
>
> . . . .

Where the record demonstrates that the trial judge did not fully consider the relative appropriateness of summary and plenary adjudication of contempt, we must independently evaluate the need for summary procedures. At the same time, we give great deference to a trial judge's explicit determination that plenary procedures are inadequate and summary procedures are necessary.

*Id.* at 1022–23 (internal citations and quotations omitted).

The court had many acts from which to choose to justify holding Cohan in contempt. But the order based the decision to proceed under Rule 42(a) solely on the "outrageous and false statements" Cohan made to the jury in his opening statement. The court found that the statements "were deliberate, and intentionally made by Mr. Cohan for the purpose of frustrating the jury from seeking the truth in this case, and that such contumacious conduct by Mr. Cohan is a material obstruction of justice."

During the summary hearing, the court explained that it delayed imposition of summary criminal contempt in order to see whether Engstrom would actually testify, as Cohan claimed he would, of his belief in a judicial conspiracy.

> You, sir, told that jury, in your opening statement, in justification of such a statement, that your client was going to take the witness stand, under oath, and say that. No such outrageous statements of any kind have been made by Mr. Engstrom, your client. Even though you, sir, have represented to this Court that your client would take the stand, it did not happen. . . . And I think, a previous time, I warned you and cautioned you I was considering a contempt matter. The reason it wasn't done before, I didn't know what you were going to do, because you misled the court by saying your client was going to take the stand and say it. That meant to this court it wasn't your sayings. And it's only when it became obvious that you might again attempt to obstruct justice, that I cited you. . . ." That's why you are now being cited.

The essence of the court's explanation is that Cohan was held in contempt because the court believed he had falsely disguised the conspiracy claim as Engstrom's belief, knowing Engstrom would not testify or, if he did, would not make this conspiracy charge. But

this issue could not be explored properly until after evidence was taken from Cohan and Engstrom—an inquiry fitting in a Rule 42(b) proceeding but not amenable to a Rule 42(a) summary contempt hearing.

The government argues that Engstrom could not testify to these beliefs because they were not held in good faith. *United States v. Powell,* 955 F.2d 1206, 1212 (9th Cir.1991) (*Powell*). Because the remarks were unsupported, the government contends they constituted a gratuitous attack on Judge Tanner. Since the statements allege judicial bias, the government argues they are contemptuous on their face.

██ An attorney's statement that his client believes the judiciary is biased is not plainly contemptuous without more. In *Gustafson,* we observed that an attorney's "charge of judicial bias inherently obstruct[s] the judicial function by undermining the court's ability to regulate [the] trial." 650 F.2d at 1020. But in the statements cited by the court, Cohan did not allege the judiciary was biased. He stated that his client believed the judiciary was biased. Although an allegation of judicial bias by a court officer, such as an attorney, necessarily undermines the court's ability to regulate a trial, the same allegation by a non-court officer will not necessarily have the same effect.

██ On the facts before us, we conclude that this allegation of judicial bias was not plainly contemptuous. The record shows that Cohan's statements purported to describe Engstrom's beliefs in a judicial conspiracy do not constitute an obstruction of justice. Engstrom's beliefs were relevant to whether he had the requisite intent to commit the charged offense. *Cheek v. United States,* 498 U.S. 192, 199–204, 111 S.Ct. 604, 609–612, 112 L.Ed.2d 617 (1991) (*Cheek*); *Powell,* 955 F.2d at 1211–12. Though *Cheek* and *Powell* require that the beliefs be held in good faith, Engstrom's failure to testify precludes resolution of this issue pursuant to Rule 42(a). The record before the district court was insufficient for the court to judge Cohan's thoughts and intents. It naturally follows that the court's order holding Cohan in contempt pursuant to Rule 42(a) must be reversed.

On remand, the district court is not foreclosed from conducting an inquiry pursuant to Rule 42(b) if it is deemed appropriate. Indeed, we do not foreclose further proceedings on any of the statements made by Cohan except for a Rule 42(a) hearing on Cohan's statements to the jury about Engstrom's belief about a conspiracy between the Internal Revenue Service (IRS) and the judiciary.

██ Cohan also contends that Judge Tanner should have transferred the Rule 42(a) proceeding to another judge. Due process may require that another judge conduct contempt proceedings when the defendant makes personal aspersions to the trial judge. *Mayberry v. Pennsylvania,* 400 U.S. 455, 466, 91 S.Ct. 499, 505, 27 L.Ed.2d 532 (1971). Bias by the trial judge or even the appearance of bias also may necessitate another judge conduct contempt proceedings. *Taylor v. Hayes,* 418 U.S. 488, 501–03, 94 S.Ct. 2697, 2704–05, 41 L.Ed.2d 897 (1974); *see Hawk v. Cardoza,* 575 F.2d 732, 734 (9th Cir.1978); *United States v. Rylander,* 714 F.2d 996, 1004 (9th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984).

██ But Rule 42(a) may only be used when contempt poses a threat to the orderliness of ongoing proceedings, that is, when prompt action is required. *See United States v. Wilson,* 421 U.S. 309, 318–19, 95 S.Ct. 1802, 1807–08, 44 L.Ed.2d 186 (1975); *Harris v. United States,* 382 U.S. 162, 164–65, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965); *Gustafson,* 650 F.2d at 1023. Because the trial is completed, there will be no further proceedings pursuant to Rule 42(a) on remand. As further Rule 42(a) proceedings will not occur, it is unnecessary for us to reach this issue.

### III

██ Cohan also appeals from Chief Judge Rothstein's order suspending his permission to practice in the Western District of Washington. We review "the terms of a disciplinary order for an abuse of discretion." *Ross,* 735 F.2d at 1172; *In re Evans,* 834 F.2d 90,

91 (4th Cir.1987) (according deference to district court's disbarment decision). We disagree that we should adopt *Nationalist Movement v. City of Cumming*, 913 F.2d 885, 895 (11th Cir.1990), *aff'd*, —— U.S. ——, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), and conduct a "full appellate review."

*Pro hac vice* lawyers in the Western District of Washington must comply with all applicable Local Rules for the Western District of Washington (Local Rules). W.Dist. Wash.R. 2(d). Local Rule 2(e)(1) requires compliance with the Washington State Rules of Professional Conduct (State Rules).

State Rule 3.5(c) provides that a "lawyer shall not engage in conduct intended to disrupt a tribunal." State Rule 8.4(d) declares that it is "professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." Local Rule 3(d) provides that an attorney, who "without just cause" fails to comply with the Local Rules, and by incorporation, the State Rules, "may be subject to such ... sanctions as the Court may deem appropriate."

■ Chief Judge Rothstein held that Cohan violated State Rule 3.5(b) which provides that a "lawyer shall not engage in conduct intended to disrupt a tribunal." She found that "Cohan made various disrespectful and confrontational remarks to Judge Tanner," and that he was "personally insulting to Judge Tanner, making comments beyond the bounds of legitimate objections or disagreements with the court's rulings." She cited as examples Cohan's remark that Judge Tanner had been "consistently insulting, irrational, [and] unfair"; and his response to Judge Tanner in which he said "I don't know what you are talking about, and I don't think you do, either." She also cited Cohan's statement to Judge Tanner that he was "having delusions" if he thought Engstrom had stood up, and his accompanying assertion, "You've been telling me whatever you want.... Your statements are based on fiction, Your Honor."

Chief Judge Rothstein determined that Cohan resisted Judge Tanner's rulings "in a disruptive and disrespectful manner that went well beyond the need to preserve issues for appeal." She also found that Cohan "dis-played flagrant defiance of Judge Tanner's orders." At various times, Cohan remarked, "I don't understand this, I just don't, I hear you, but I can't believe it"; "You are making a mockery of the judicial process"; and, "This is a kangaroo court."

Cohan relies on *Hampton v. Hanrahan*, 600 F.2d 600, 647–48 (7th Cir.1979), *rev'd in part*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), for the proposition that his behavior should have been evaluated in light of the judge's conduct. In *Hampton*, the Seventh Circuit held that a district judge in a summary contempt hearing erred in holding counsel obstructed justice because he failed to consider counsel's conduct in light of the "background of events leading up to it." *Id.* The judge in *Hampton* had erroneously accused counsel of deliberately misreading a stipulation, had denied counsel permission to inspect the transcript to demonstrate that he had not misread the statement, and had refused to correct the record. Because the record fails to illustrate similar conduct by Judge Tanner, we conclude that Chief Judge Rothstein did not abuse her discretion in refusing to admit evidence of this conduct.

■ Arguing a due process violation, Cohan next asserts that an attorney subject to disciplinary proceedings is entitled to notice and a hearing. *Rosenthal v. Justices of the Supreme Court of Calif.*, 910 F.2d 561, 564 (9th Cir.1990), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991); *Ross*, 735 F.2d at 1170. We conclude Cohan received the procedural protection due. He received notice of the hearing and the opportunity to explain. Procedural due process does not encompass the right to present all desired evidence.

Cohan also contends that the district court erred in determining that three years' suspension was warranted by the evidence. Based on the record, we conclude that Chief Judge Rothstein did not abuse her discretion in suspending Cohan for three years.

## IV

Rule 42(b) requires another judge to conduct the proceedings "[i]f the contempt

charged involves disrespect to or criticism of a judge." Here, Chief Judge Rothstein found, "Cohan made various disrespectful and confrontational remarks to Judge Tanner," and was "personally insulting to Judge Tanner." Because of these findings, Rule 42(b) requires that a different judge be assigned upon remand.

The order suspending permission to practice is AFFIRMED; the summary contempt order is REVERSED AND REMANDED.