Rosemary S. DACOSTA and Ricardo S. Dacosta, husband and wife, Plaintiffs,

v.

NOVARTIS AG, NOVARTIS PHARMA-CEUTICALS CORPORATION, and Leonard Weaver, Defendants.

No. CV 01–800–BR.

United States District Court, D. Oregon.

June 18, 2002.

Michael L. Williams, Leslie W. O'Leary, Brian S. Campf, Williams Dailey & O'Leary Craine & Love, P.C., Portland, Jennifer Johnson, Lopez Hodes Restaino Milman Skikos Polos, Newport Beach, CA, for Plaintiffs.

Mark H. Wagner, Kenneth D. Renner, Ruth Casby Rocker, Hoffman, Hart & Wagner, LLP, Portland, Donald W. Fowler, Frank Leone, Jr., Rebecca A. Womeldorf, William S D Cravens, Spriggs & Hollingsworth, Washington, D.C., for Defendant Novartis Pharmaceuticals Corporation and Leonard Weaver.

Paul T. Fortino, Erick J. Haynie, Sarah J. Crooks, Perkins Coie LLP, Portland,

Dennis P. Orr, Grant J. Esposito, Elizabeth L. Goldsmith, Mayer, Brown, Rowe & Maw, New York, NY, for Defendant Novartis AG.

## OPINION AND ORDER

BROWN, District Judge.

Plaintiffs originally filed a Complaint in state court that alleged Plaintiff Rosemary DaCosta suffered severe heart injuries due to Defendants' failure to warn Plaintiffs' physician about certain health risks associated with pharmaceutical products allegedly researched, developed, manufactured, marketed, distributed, and sold by Defendant Novartis Pharmaceuticals Corporation (NPC) and its Swiss parent company, Defendant Novartis AG (NAG). NPC timely removed the action to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction.[1]

NAG is represented in this matter by local counsel and the national law firm of Mayer, Brown, Rowe & Maw. On February 5, 2002, the Court granted the applications for special admission *pro hac vice* of three attorneys from that firm, Dennis P. Orr, Grant J. Esposito, and Elizabeth L. Goldsmith. On April 26, 2002, the Court suspended those special admissions until further notice because of alleged discovery abuses by counsel. The Court, however, granted counsel leave to file motions for readmission.

This matter now comes before the Court on NAG's Motion for Readmission *Pro Hac Vice* (#136) of Orr, Esposito, and Goldsmith. For the following reasons, the Court **GRANTS** the Motion for Readmission and **VACATES** the Court's Order that suspended until further notice the special admissions *pro hac vice* of Orr, Esposito, and Goldsmith.

### *PROCEDURAL BACKGROUND*

The events that precipitated the Court's suspension of counsels' special admissions can be traced to the initial stages of this litigation. From the outset, NAG consistently has taken the position that it is not subject to the personal jurisdiction of this Court and has contested its obligation to submit to Plaintiffs' discovery demands on various fronts.

Within a month of NPC's removal of this action, NAG filed an initial Motion to Dismiss Plaintiffs' Complaint for lack of personal jurisdiction. On July 10, 2001, the Court denied NAG's Motion to Dismiss for failure to comply with the certification requirement of LR 7.1(a).[2] The Court, however, gave NAG leave to renew the motion to dismiss following the Court's decision on Plaintiffs' then-pending Motion to Remand.

On September 18, 2001, NAG filed a Renewed Motion to Dismiss for Lack of Personal Jurisdiction. In response to that Motion, Plaintiffs filed a Motion to Stay Determination of NAG's Renewed Motion to Dismiss pending a period of jurisdictional discovery. On October 10, 2001, the Court denied NAG's Renewed Motion to Dismiss, granted Plaintiffs the right to

---

1. NPC alleged Defendant Leonard Weaver, an Oregon resident, was fraudulently joined. Plaintiffs moved to remand the action to state court based on a lack of diversity due to the presence of Defendant Weaver. The Court denied Plaintiffs' motion to remand because Plaintiffs failed to state a claim against Defendant Weaver according to the settled law of the state of Oregon. The Court, therefore, dismissed Plaintiffs' claims against Defendant

Weaver pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

2. LR 7.1(a) provides the court may deny any motion that does not contain a certification in the first paragraph that "the parties made a good faith effort through personal or telephone conferences to resolve the dispute, and have been unable to do so" or that the opposing party "willingly refused to confer."

conduct jurisdictional discovery, and permitted NAG to refile its Motion to Dismiss after Plaintiffs completed jurisdictional discovery. The Court ordered the parties to complete jurisdictional discovery by January 4, 2002, and also set a January 25, 2002, deadline for NAG to file a renewed motion to dismiss.

Pursuant to this order, Plaintiffs attempted to serve various requests for production and a notice of organizational deposition. NAG refused to comply with Plaintiffs' discovery requests and asserted Plaintiffs had to use the discovery procedures established by the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (Hague Evidence Convention) rather than the Federal Rules of Civil Procedure because NAG is a Swiss company without any office or base in the United States. On November 11, 2001, Plaintiffs filed a Motion for Leave to Conduct Jurisdictional Discovery Pursuant to the Federal Rules rather than the Hague Evidence Convention.

On November 27, 2001, the Court heard oral argument on Plaintiffs' discovery motion. The Court granted in part and denied in part Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery Pursuant to the Federal Rules. In particular, the Court stated:

I am ordering that judicially supervised, narrowly tailored jurisdictional discovery against Novartis AG proceed pursuant to the Federal Rules of Civil Procedure.

That conclusion assumes that the discovery, which will go forward under the Federal Rules, is, in fact, specifically tailored to address the question of jurisdiction and no more, and it assumes, therefore, that the Plaintiff will, as I indicated earlier, review each of the now outstanding discovery requests with that standard in mind, and issue a definitive statement to the Defendant specifying which requests Plaintiff contends are, in fact, narrowly tailored and specifically focused towards the jurisdictional inquiry.

The Court ordered Plaintiffs to supplement or to clarify their discovery requests by December 3, 2001. The Court further ordered NAG to serve objections to those requests "that articulate specifically the bases why the Defendant contends the request is not reasonably tailored to lead to the discovery of evidence pertinent to the jurisdictional inquiry" by December 10, 2001. The Court also waived any requirement that Plaintiffs file a formal, written motion to compel responses to these requests and scheduled a hearing on NAG's objections for December 14, 2001. Finally, the Court extended the jurisdictional discovery period until April 5, 2002.

On December 10, 2001, NAG filed its Responses and Objections to Plaintiffs' Amended Request for Production of Documents and to Plaintiffs' Amended Notice of Organizational Deposition. NAG did not articulate specific objections to each request for production as ordered by the Court. Instead, NAG posed sixteen separate "General Responses and Objections" to Plaintiffs' Requests, several of which contained multiple subparts. In a single General Objection, NAG objected to all of Plaintiffs' requests on the grounds that the requests were vague, redundant, burdensome, overbroad, oppressive, not reasonably particular, not narrowly tailored as required by the Court in this case, not susceptible to a reasoned interpretation, and sought information that was not reasonably calculated to lead to the discovery of admissible evidence. NAG's 15 other General Objections addressed additional alleged problems with Plaintiffs' requests, including the impracticality of NAG reviewing "all of the materials in its possession, custody or control to determine if any information contained anywhere in their

files may be responsive to any of the requests contained in [Plaintiffs'] Request." In response to the particular requests at issue, NAG objected as follows:

REQUEST FOR PRODUCTION NO. 1: Any express agreement by which NAG has consented that NPC can, will, or has the power to act on NAG's behalf and subject to NAG's control for any purpose.

RESPONSE: Subject to the foregoing objections, NAG will produce non-privileged documents it reasonably understands to be responsive to this request, if any.

\* \* \* \* \* \*

REQUEST FOR PRODUCTION NO. 11: All documents reflecting any of the following:

\* \* \* \* \* \*

d. Any committee on which any management level NAG employee sits that approves or disapproves any decision or request of NPC;

\* \* \* \* \* \*

RESPONSE: Subject to the foregoing objections, NAG will produce non-privileged documents it reasonably understands to be responsive to this request, if any.

\* \* \* \* \* \*

REQUEST FOR PRODUCTION NO. 17: All decisions, orders, rulings, and recommendations, whether published or unpublished, from any state or federal court, special master, commission, or administrative body, or other governmental or judicial body or representative in the United States that has ruled on the issue of whether NAG is subject to jurisdiction in the United States as a whole, or in any state in particular.

RESPONSE: NAG objects that this request calls for publicly available documents. Subject to this and the foregoing objections, NAG will produce non-

privileged documents it reasonably understands to be responsive to this request, if any.

During the December 14, 2001, hearing on NAG's objections, NAG's counsel represented to the Court that it had "agreed to search for and produce documents in response to numerous requests," including Request Nos. 1, 11, and 17. NAG's counsel further stated, "[N]otwithstanding [NAG's general] objections [to those requests], we are going to search for documents that are reasonably responsive to those requests and produce documents that could be found" after a reasonable search. Plaintiffs' counsel, however, indicated he would like the Court to rule on NAG's objections and to clarify NAG's discovery obligations.

The Court first stated it would not rule on NAG's general responses and objections because "these pages of recitation are not tailored to a particular request" and "they accomplish nothing." The Court, however, gave NAG the opportunity to clarify on the record the objections NAG continued to assert with respect to each particular request for production.

With respect to Request No. 1, NAG objected to: 1) the broad definition of NAG on which Plaintiffs relied, 2) the lack of a time limitation on the request, and 3) Plaintiffs' reliance on an agency jurisdictional theory. Plaintiffs agreed to limit Request No. 1 to documents generated from 1992 until Plaintiffs filed their Complaint. This limitation *ipso facto* narrowed the definition of NAG to Novartis AG in its current form plus its two immediate predecessors, Sandoz Ltd. a/k/a Sandoz AG and Ciba–Geigy AG, which merged to form the current entity some time after 1992. The Court overruled NAG's remaining objection to the assertion of an agency theory of jurisdiction. The Court stated it could not conclude as a matter of law that the re-

quested discovery would not reveal a sufficient link between NAG and NPC to support a finding of personal jurisdiction over the Swiss parent corporation.

With respect to Request No. 11, NAG's counsel stated, "[T]he objections here would be fairly mundane. Just the ones we spoke about earlier done in the time frame, and the definition of Novartis A.G." The Court noted its previous limitation on all of Plaintiffs' requests to documents generated from 1992 forward and pointed out this limitation also narrowed the definition of NAG.

With respect to Request No. 17, NAG's counsel indicated NAG was not aware of any responsive opinions. NAG's counsel further represented to the Court, "[N]onetheless, we will search for them, and we've already agreed to produce them." [3]

At Plaintiffs' request, the Court also addressed NAG's General Objection regarding the practicality of producing "all" or "every" responsive document. The Court explained as follows:

> Here is the defendants' obligation. With respect to those requests for which the Court overruled objections and which now call for substantive responses, the defendant and defendant's counsel must make a thorough review of all of the records within the scope of the request. Counsel must inform their clients of the obligation. And when officers of the Court—these lawyers or their colleagues elsewhere, when they say they have a basis to make a representation to the Court that there are no responsive documents, we accept that. We don't go beyond it.
>
> But that means counsel have to take steps to assure that there indeed has been a thorough search. And that all

responsive documents have been identified, privileged documents have been culled out and put on a privilege[d][sic] log, responsive documents to which no privilege is being asserted have been produced.

> Saying no responsive documents exists means the lawyers, as officers of the court, stand behind that and stand for the consequences if such a representation ever were made and the lawyers have not adequately exercised their responsibilities. So I don't foresee a problem.

The Court then ordered NAG to produce the requested documents by January 14, 2002.

On January 14, 2002, NAG produced for Plaintiffs 28 pages of documents accompanied by a letter that indicated the production was "subject to Novartis AG's previously stated objections." Those 28 pages consisted of two court orders in which the courts concluded they did not have personal jurisdiction over NAG.

On January 30, 2002, NAG filed a Statement Regarding Status of Jurisdictional Discovery in which it stated:

> To date, NAG has produced several Orders in which courts from various jurisdictions granted motions to dismiss for lack of personal jurisdiction filed by NAG and a predecessor, Sandoz Ltd. NAG has also located some additional Orders granting motions to dismiss for lack of personal jurisdiction filed by Ciba–Geigy AG, another predecessor of NAG. Because the products at issue in this case came from the former Sandoz business and because the organizational structure of NAG is based on the structure established by Sandoz AG, docu-

---

**3.** Although the written Minute Order memorializing the December 14, 2001, hearing incorrectly provided that no further response to Request No. 17 was necessary, NAG, nonethe-

less, was obligated to search for and to produce responsive documents in light of the representations NAG's counsel made to the Court.

ments related to Ciba–Geigy AG are not relevant. Additionally, these Orders are dated prior to the relevant time period for discovery. Nonetheless, without waiving any objections regarding the relevant time period or the relevancy of these Orders, NAG will produce these Orders. NAG continues to search for documents responsive to Plaintiff's Request No. 11.

On February 7, 2002, NAG produced the additional jurisdictional orders involving Ciba–Geigy AG.

On February 8, 2002, the Court held an additional discovery conference with the parties. Plaintiffs challenged NAG's overbreadth objection to Plaintiffs' Interrogatories and Notice of Organizational Deposition of a representative of NAG. The Court sustained the objections to the interrogatories and deposition. The Court did not address Plaintiffs' previously propounded requests for production and did not limit further the scope of those requests. As noted, the Court had ordered NAG to produce the responsive documents three weeks before the February 8, 2002, conference and NAG represented to the Court that it had complied with that Order.

Nonetheless, by letter dated February 21, 2002, counsel for NAG informed Plaintiffs that

[c]onsistent with the direction given by the Court, Novartis AG searched for, but found no documents concerning (1) issues in this case that could relate to specific jurisdiction, and (2) either direct contacts with or having caused a result in Oregon, which would support a finding of general jurisdiction.

The only documents that NAG produced for Plaintiffs were ten decisions by courts of various jurisdictions that granted motions to dismiss for lack of personal jurisdiction filed by either Sandoz Ltd. or Ciba–Geigy AG.

In March 2002, however, Plaintiffs' counsel independently discovered two district court orders in which the courts held NAG's predecessors subject to their personal jurisdiction. In *Smith v. Sandoz Ltd.*, No. 1:95–cv–3389–MHS (N.D. Ga. filed Sept. 27, 1996), the district court for the Northern District of Georgia concluded there was a sufficient agency relationship between Sandoz Ltd. and Sandoz Pharmaceuticals Corporation, the predecessor of NPC, to attribute the forum contacts of the subsidiary to the foreign parent. In *Mims v. Sandoz Pharm. Corp.*, No. CA 94–0672–AH–C (S.D. Ala. filed May 24, 1996), the district court for the Southern District of Alabama held Sandoz Ltd. waived its defense of lack of personal jurisdiction when it failed to provide discovery responses "that would have laid to rest" whether Sandoz Ltd. had exercised the requisite control over Sandoz Pharmaceuticals Corporation for purposes of an agency theory of jurisdiction. The court stated Sandoz Ltd.'s failure to supply the discovery materials created the presumption that the materials would support the plaintiffs' claims and that Sandoz Ltd.'s personal jurisdiction defense lacked merit.

One of the documents that Sandoz Ltd. failed to produce in *Mims* was a 1952 licensing agreement between Sandoz Chemicals Works and Sandoz Ltd. Counsel for Sandoz Ltd. first confirmed to the court that the agreement existed; then counsel denied the agreement existed; finally, counsel admitted the agreement existed but denied it was still in effect. When Sandoz Ltd. finally produced the agreement pursuant to court order, it failed to provide the appendices to the agreement. NAG did not produce the 1952 licensing agreement or any of its appendices in response to Plaintiffs' Requests for Production in this matter.

Orr, Esposito, and the law firm of Mayer, Brown, Rowe and Maw participated in both the *Mims* and *Smith* cases as counsel for Sandoz Pharma Ltd. Each of the court's jurisdictional orders, however, were issued before they became involved in those cases.

On March 27, 2002, Plaintiffs filed a Motion for Sanctions against NAG pursuant to Fed.R.Civ.P. 37 based on NAG's failure to produce the court orders in the *Smith* and *Mims* cases and NAG's failure to produce the 1952 licensing agreement. In addition, Plaintiffs asserted NAG's representative testified during his organizational deposition that NAG's board of directors had approved of the sale of an NPC facility in New Jersey before NPC's board of directors voted on the sale. Plaintiffs further asserted responsive documents were "likely" created during this transaction, yet NAG failed to produce any documents that evidenced the approval process. Based on these alleged discovery abuses, Plaintiffs moved the Court for an order declaring NAG waived its personal jurisdiction defense and defaulted on the issue of liability. Plaintiffs also moved the Court to hold NAG in contempt of court for failure to obey this Court's discovery orders and to order NAG to pay Plaintiffs' costs and attorneys' fees incurred as a result of NAG's jurisdictional challenge.

In response to Plaintiffs' Motion for Sanctions, NAG argued it had no obligation to produce any of the documents at issue. In particular, NAG contended:

1. Plaintiffs' Motion must be denied because they did not move to compel production of the documents first.

2. None of the documents are within the scope of discovery as expressed by the Court during the February 8, 2002, hearing.

3. The Court held Novartis AG had no obligation to respond to Request No. 17 in its Minute Order memorializing the December 14, 2001, hearing.

4. NAG had no obligation to produce publicly available documents.

5. The *Mims* decision was not responsive to Plaintiffs' Request No. 17 because jurisdiction was imposed on Sandoz Ltd. as a discovery sanction rather than the result of a decision on the merits of the defense.

6. The *smith* decision was not responsive to Request No. 17 because that decision was issued before completion of jurisdictional discovery and was based solely on the allegations of the plaintiffs' complaint.

7. The 1952 licensing agreement was not responsive to Plaintiffs' Request No. 1 because NPC was not a party to that agreement.

8. The 1952 agreement pre-dates the jurisdictional time limitation the Court imposed and to which Plaintiffs agreed during the December 14, 2001, hearing.

9. The 1952 agreement makes no reference to the products at issue in this case.

10. Even if NAG approved of the sale of NPC's New Jersey facility, that fact is not an indicia of control that could support a finding of personal jurisdiction on an agency theory.

12. Plaintiffs only learned of the approval because NAG "voluntarily agreed to provide information beyond what the Court ordered" and did not object to that line of questioning during the organizational deposition.

On April 26, 2002, the Court conducted a hearing on Plaintiffs' Motion for Sanctions. The Court rejected NAG's "excuses for not producing, for example, the Court decisions in the *Mims* and the *Smith* cases … [as] without merit and completely frivo-

lous." The Court expressed its concern that NAG's discovery responses were unreliable. The Court explained:

> When the Court said in previous hearings that the Court would accept the word of counsel that no responsive documents exists, the Court assumed that relying upon counsel's representations would be reasonable. I think I've made clear that I now am of the opinion that that is not reasonable. And until further notice ... out-of-state counsel will not file pleadings and will not participate until it has been demonstrated that (A), they understand the responsibilities of appearing pro hac vice; and (B), they are willing to assume them and perform them without fail in the future.
>
> I am making as a condition to any reactivation of pro hac vice application the submission of affidavits by each of the lawyers who wish to be readmitted, demonstrating the facts with which they are—personally were involved concerning their role in this discovery debacle. And in the absence of such an affidavit, the Court will not consider readmission.

The Court also granted Plaintiffs leave to redefine the scope of jurisdictional discovery from NAG and withdrew all previous limitations that were imposed by the Court. The Court took Plaintiffs' Motion for Sanctions under advisement with respect to Plaintiffs' request for attorneys' fees and costs. The Court denied the remaining portions of the Motion.

On May 10, 2002, NAG filed a Motion for Readmission of its national counsel, Dennis P. Orr, Grant J. Esposito, and Elizabeth L. Goldsmith, along with affidavits that explained each attorney's role in the discovery process as required by the Court. Plaintiffs do not oppose the Motion for Readmission. On June 6, 2002, Plaintiffs withdrew the remaining portion of their Motion for Sanctions reserving the right to reassert the Motion in the future.

### STANDARDS

■ The District Court for the District of Oregon has the power to specially admit *pro hac vice* any attorney of good standing of the bar of any United States court or the highest court of any other state. Local Rule (LR) 83.3. "Any court which has the power to admit attorneys to practice may also sanction them for unprofessional conduct." *Baldwin Hardware Corp. v. Franksu Enterprise Corp.*, 78 F.3d 550, 562 (Fed.Cir.), *cert. denied*, 519 U.S. 949, 117 S.Ct. 360, 136 L.Ed.2d 251 (1996) (quoting *Standing Committee on Discipline v. Ross*, 735 F.2d 1168, 1170 (9th Cir.), *cert. denied*, 469 U.S. 1081, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984)). The power to sanction attorneys necessarily "encompasses the authority to suspend an attorney admitted *pro hac vice* from further practice before the court." *Id.* (citing *United States v. Engstrom*, 16 F.3d 1006 (9th Cir. 1994)).

■ The court, however, may not invoke the inherent power to sanction counsel without a " 'specific finding of bad faith.' " *Yagman v. Republic Ins.*, 987 F.2d 622, 627 (9th Cir.1993) (quoting *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir.1986)). The court must exercise this inherent power " 'with restraint and discretion.' " *Id.* (quoting *Chambers v. NASCO*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

### DISCUSSION

■ Attorneys who are specially admitted *pro hac vice* in this Court must comply with the standards of professional conduct required of members of the Oregon State Bar, including the Oregon Code of Professional Responsibility. LR 83.7(a). Disciplinary Rule (DR) 7–102(A) provides in part, a lawyer shall not "[conceal or knowingly fail to disclose that which the lawyer is required by law to reveal," or "knowingly make a false statement of law

or fact." It is also misconduct to disregard a standing ruling of the court made in the course of a proceeding or to intentionally violate any established rule of procedure. DR 7–106(A), (C)(7). Pursuant to the Federal Rules of Civil Procedure, counsel must ensure that a "reasonable inquiry" has been made with respect to the factual and legal basis for any discovery response. Fed.R.Civ.P. 26(g), advisory committee's notes. A lawyer responding to a discovery request must make "a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Fed.R.Civ.P. 26(g), advisory committee's notes.

At the time of the April 26, 2002, hearing on Plaintiffs' Motion for Sanctions, the record established counsel for NAG failed to produce jurisdictional opinions adverse to NAG despite counsel's earlier promise in open court to do so and despite the fact the opinions fell within the scope of Plaintiffs' Request No. 17. Esposito and Orr participated in both of the cases at issue and presumably knew about the adverse opinions. NAG's counsel did not testify under oath otherwise. In fact, counsel located one of the opinions in his firm's closed files after Plaintiffs specifically requested he produce that document. In addition, the record revealed national counsel apparently did not search for documents regarding NAG's approval of the sale of NPC's New Jersey facility or other documents that showed NAG's control over NPC. Counsel continued to argue NAG was not obligated to produce such documents even if they existed because the Court limited discovery on February 8, 2002. The Court's limitation, however, did not apply to document requests Plaintiffs had previously served and to which responses were due on January 14, 2002. In other words, NAG had an obligation under the Court's December 14, 2001, Order to search for and to produce those documents, but NAG apparently failed to do so.[4]

Based on this evidence, the Court concluded it could not rely on the representations of NAG's national counsel. The Court, however, could not determine whether the failures of NAG's national counsel were intentional or made in bad faith because in their Response to the Motion for Sanctions, they failed to explain their roles in the discovery process. Instead, they relied on their numerous legal objections to the Court's previously-issued discovery orders. The Court, therefore, required NAG's national counsel to file Motions for Readmission and accompanying affidavits that explained each attorney's participation in the discovery process.

The affidavits of counsel reveal the senior attorney at Mayer, Brown, Rowe & Maw responsible for this matter is Dennis P. Orr, and he has represented NAG since February 1997. Orr apparently also represented Sandoz Ltd., NAG's predecessor, prior to that time. In addition, Orr previously represented Sandoz Pharma Ltd. before he represented NAG. Although Orr was not directly involved in the discovery matters in this litigation, he "regularly" conferred with his associate, Grant J. Esposito, and in-house counsel for NAG on jurisdictional discovery issues.

Esposito was the attorney most directly involved in NAG's jurisdictional discovery

---

4. In addition, NAG's counsel advanced numerous groundless reasons to justify NAG's failure to produce the contested documents. For example, NAG first argued the Motion for Sanctions should be denied because Plaintiffs failed to file a Motion to Compel. That argument was without merit because, at NAG's urgent request, the Court established a monthly conference schedule to resolve expeditiously the parties' continuing discovery disputes without formal motions.

responses. Esposito, however, did not attend the December 14, 2001, discovery conference at which the Court received the assurance of NAG's counsel that certain documents would be produced. Although Esposito received a copy of the Court's Minute Order after the hearing and discussed the meaning of that Order with NAG's local counsel who had attended the hearing, Esposito and NAG's local counsel determined NAG did not need to make any further response pursuant to the written Minute Order issued after the discovery conference. That order, as previously noted, contained an error. Esposito and local counsel also determined they were unaware of any jurisdictional decisions that were adverse to NAG. They apparently believed Plaintiffs' Request No. 17 was limited to adverse decisions rather than applicable to all decisions involving jurisdictional determinations. Local counsel, however, suggested NAG should produce any personal jurisdiction decisions concerning NAG or its immediate predecessors. Esposito maintained a file of such decisions and similar motions to dismiss filed by his firm. Esposito collected four opinions from his files and asked his associate, Elizabeth Goldsmith, to copy and to Bates stamp the documents for production to Plaintiffs. Goldsmith copied the documents and sent them to local counsel.

Esposito also asked NAG's in-house counsel whether NAG was aware of any other jurisdictional decisions involving NAG or its predecessors. In-house counsel was not aware of any other decisions. Esposito then contacted the law firm that represented Ciba–Geigy AG prior to its merger with NAG and asked them to mail copies of any jurisdictional decisions involving that company. Goldsmith arranged to have the documents Bates stamped, copied, and mailed to local coun-

sel. Esposito also asked Goldsmith to confer with national counsel for NPC to see if they were aware of any additional jurisdictional decisions. Current national counsel for NPC also represented Sandoz Pharmaceuticals Corporation, NPC's immediate predecessor. NPC's attorney told Goldsmith she could not locate any additional jurisdictional decisions. Finally, Esposito contacted a former in-house attorney for NPC who worked on litigation involving the drug Parlodel before Esposito's firm became involved in that litigation. She informed Esposito that she was not aware of any other jurisdictional decisions involving Sandoz Ltd., Ciba–Geigy AG, or NAG.

Nevertheless, Esposito did not search his firm's closed files from the Parlodel litigation. In his affidavit, Esposito explained he did not search the firm's files "because in light of the success Novartis AG has had in bringing motions to dismiss based on lack of personal jurisdiction, it did not occur to me to also search the files of the Parlodel litigation for adverse decisions on jurisdictional issues." Orr similarly testified he did not recall the decisions in the *Smith* or *Mims* case and did not have those decisions in his personal files. Orr also testified both of the decisions were handed down before his retention as Sandoz Ltd.'s attorney of record.

With respect to the 1952 licensing agreement, Esposito testified the agreement did not occur to him or to anyone else working on the case until Plaintiffs raised the issue in April 2002. Esposito explained the agreement on its face does not appear to apply to NPC, the subsidiary at issue in this matter. Esposito stated, "[T]hough we are still investigating whether there is any connection between Sandoz Chemical Works, Inc. and NPC, at the time this document was brought to my attention, and as of today, the 1952 agreement does not appear responsive."[5] In addition, the

**5.** Esposito further testified in-house counsel

for NAG determined the 1952 licensing agree-

1952 agreement on its face pre-dated the time limitation this Court imposed on December 14, 2001, and to which Plaintiffs agreed.

Finally, with respect to NAG's approval of the sale of NPC's New Jersey facility, Esposito explained he met with in-house counsel, discussed likely sources of responsive documents, and drafted a memorandum to accompany Plaintiffs' document requests that in-house counsel distributed to NAG personnel. Esposito testified the memorandum instructed NAG to search for

> documents related to the cause of action that could support a finding of specific jurisdiction, or that showed contacts with Oregon, for purposes of determining general jurisdiction.

Esposito argues the Court adopted this same standard and properly limited the jurisdictional discovery required of NAG during the February 8, 2002, hearing.

■ The Court finds Goldsmith engaged in no objectionable or sanctionable conduct. Her participation in the jurisdictional discovery process apparently was limited to copying and to producing documents chosen by her supervisor and making a single phone call at her supervisor's direction. The Court finds Goldsmith neither withheld documents she knew should be disclosed nor failed to make reasonable efforts to locate documents in bad faith. The Court, therefore, grants Goldsmith's motion for readmission and vacates the Order that suspended her *pro hac vice* admission.

The Court further finds Esposito did not intentionally withhold the *Smith* or *Mims* decisions from Plaintiffs. Esposito testified the opinions did not occur to him before Plaintiffs mentioned them. Although Esposito was involved in both of those cases, he represented a different client and he did not join the litigation until after the decisions were issued. Nonetheless, the Court also finds Esposito should have conducted a diligent search of his own closed files for documents responsive to Plaintiffs' Request No. 17. NAG promised to produce documents in response to that request, and Plaintiffs and the Court relied on that representation. If Esposito had searched those files, he would have discovered the *Smith* opinion. Because Esposito did not file the motion to dismiss that resulted in the jurisdictional finding in *Smith* and did not recall the opinion when he received Plaintiffs' document requests, the Court finds Esposito's failure to search for and to produce the *Smith* opinion was, at most, negligent and not done in bad faith or with the intent to withhold relevant and responsive documents from Plaintiffs.

In addition, the Court finds Esposito's failure to produce the 1952 licensing agreement was warranted. The Court, with Plaintiffs' agreement, limited discovery to documents generated after 1992. On its face, the original agreement was signed in 1952, and the only appendix attached was signed in 1959. Esposito had no obligation to produce the 1952 agreement under the Court's previous rulings.

The Court finds most troubling Esposito's testimony concerning his search for documents responsive to Plaintiffs' Request No. 11. Esposito indicates he still has not confirmed whether NAG possesses or has control over any documents that show NAG's board approved of NPC's sale of the facility. Esposito, therefore, did not make a reasonable effort to locate documents responsive to Plaintiffs' request relating to this issue either before NAG's documents were due or since that time.

---

ment had been in effect at one time between "certain Sandoz entities, though it is still uncertain whether any of them were predecessors to NPC."

Esposito maintains he had no obligation to search for such documents because they were irrelevant according to his personal definition of relevance. The Court, however, did not adopt Esposito's definition of relevance with respect to Plaintiffs' Request No. 11. The Court did not limit Plaintiffs' document requests as Esposito argues, and the Court finds any documents that relate to the approval of the New Jersey sale, if they exist, are responsive to Plaintiffs' Request as modified by the Court on December 14, 2001.[6] In fact, the Court ordered NAG to produce all responsive documents three weeks before issuing its ruling on the interrogatories and organizational deposition notice on which Esposito now relies.

In order to be accessible to the parties and to assist them in the efficient resolution of their discovery disputes, the Court waived the normal requirement that parties engage in formal, written discovery motion practice. The Court, therefore, did not issue written discovery orders that confirmed the parties' obligations. Esposito apparently understood the Court's February 8, 2002, Order as limiting his client's discovery obligations with respect to document requests as well as the still-outstanding interrogatories and organizational deposition. Whether Esposito's interpretation is a reasonable one, the Court finds Esposito subjectively believed the Court had limited his obligation to respond to Request No. 11. The Court also notes Esposito has expressed regret for any confusion caused by his conduct in the discovery process. He also states the Court will not have to question his understanding of his discovery obligations in the future. Although it is unfortunate the Court had to take serious measures to underscore the importance of counsel's discovery obli-

gations, the Court now is satisfied that Esposito did not act in bad faith or intentionally withhold responsive documents. The Court also believes Esposito will take great care to avoid engaging conduct in the future that might lead to an appearance of bad faith on his part. Accordingly, the Court grants Esposito's Motion for Readmission and vacates its Order suspending his admission.

Orr did not participate actively in jurisdictional discovery. A lawyer who has direct supervisory authority over another lawyer is responsible for that lawyer's misconduct under the disciplinary rules if the supervising attorney "knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." DR 1–102(B). As explained above, the Court concludes Goldsmith and Esposito did not act in bad faith or with the intention to withhold documents from Plaintiffs. In addition, Orr testified his law firm's policy is to discipline immediately any attorney who engages in such conduct. The Court accepts this statement as Orr's personal representation that he was not aware of any misconduct, that he will take responsibility for overseeing future discovery in this matter, and that he will ensure the letter and the intent of this Court's orders and all procedural rules are followed. Based on the foregoing, the Court finds Orr did not act in bad faith in his role as supervisor of Esposito and Goldsmith. Moreover, Orr testified he personally did not recall the decisions in *Mims* and *Smith;* thus, any failure on his part to produce those documents was, at most, negligent. Accordingly, the Court grants Orr's Motion for Readmission and vacates its Order suspending his admission.

---

**6.** As noted, the Court withdrew all restrictions and limitations from Plaintiffs' discovery requests and ordered NAG to respond to Plaintiffs' requests as they were originally written by Plaintiffs.

*CONCLUSION*

For these reasons, the Court **GRANTS** NAG's Motion for Readmission *Pro Hac Vice* (# 136) of Dennis P. Orr, Grant J. Esposito, and Elizabeth L. Goldsmith and **VACATES** the Court's Order that suspended until further notice the special admissions *pro hac vice* of Orr, Esposito, and Goldsmith.

IT IS SO ORDERED.